[Cite as *Morrow v. Becker*, 2012-Ohio-3875.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| --- | --- | --- |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| JEFFREY MORROW | C.A. No. 11CA0066-M |
| --- | --- |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| SHERRI BECKER | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellee | CASE No. 04 PA 0199 |

DECISION AND JOURNAL ENTRY

Dated: August 27, 2012

CARR, Judge.

{¶1} Appellant Jeffrey Morrow appeals the judgment of the Medina County Court of Common Pleas, Domestic Relations Division. This Court affirms in part and reverses in part.

I.

{¶2} Jeffrey Morrow ("Father") and Sherri Becker ("Mother") are the parents of two children ("Mo" and "Mac"). Mac, who is two years younger than Mo, has special needs arising out of Down Syndrome. Mother was designated as the residential parent and Father was awarded parenting time with the children as follows: every other Wednesday from 6 p.m. until 9 a.m. the following morning with both children; alternate weekends from 6 p.m. Thursday until 9 p.m. Sunday with Mo; and the same alternate weekends on Sunday from 11 a.m. until 9 p.m. with Mac. The court order allowed for alternative parenting time arrangements as the parties may agree. Father was also ordered to pay child support in the amount of $2,198.05 per month.

{¶3} A little over a year later, the trial court issued a judgment entry after a hearing on motions to modify parenting time. The trial court awarded Father parenting time pursuant to the court's standard visitation schedule, with the following modifications: the parties must exchange the children in public places; the parties would share time with the children equally during Thanksgiving and winter breaks; and Father would not have summer vacation parenting time. The standard order of visitation provided for alternate weekend visits from 6 p.m. Friday until 6 p.m. Sunday, plus one weekday evening, consisting of three hours on Wednesdays if the parties could not otherwise agree. Father appealed the trial court's reduction of his parenting time. This Court affirmed the trial court's judgment. *Morrow v. Becker*, 9th Dist. No. 07CA0054-M, 2008-Ohio-155.

{¶4} In August 2009, Father filed a motion to modify and reduce his child support obligation. A couple weeks later, Mother filed a motion to modify parenting time. Four months later, she filed a motion for contempt, alleging that Father had failed to pay child support as ordered. The magistrate scheduled and continued hearings on the motions multiple times at the parties' request. The magistrate heard Mother's motion to modify parenting time on July 27, 2010, and scheduled a hearing on the issues of the modification of child support and contempt for August 10, 2010. On July 29, 2010, Father's attorney moved to withdraw. His subsequent attorney moved on August 2, 2010, to continue the August 10 hearing. Given the numerous prior continuances coupled with Father's assertion that his new counsel would be prepared for hearing, the magistrate denied the motion for a continuance. She heard Father's motion to modify child support and Mother's motion for contempt on August 10, 2010. The magistrate issued separate decisions arising out of the two hearings. Father filed objections to both decisions.

{¶5}    The trial court overruled the objections, although it corrected one typographical error.  In sum, the trial court ordered the following.  Father would have parenting time with the children on alternating weekends from Friday at 6:00 p.m. until Monday when he delivered the children to school or child care.  He was no longer granted mid-week visitations, although the parties were free to consider overnight Wednesday visitations for Mo if Father's international travel schedule abated in the future.  The parties were required to follow the court's standard parenting time schedule for holidays and days of special meaning if they could not otherwise agree regarding such days.  Father would not have extended parenting time, including Christmas break, spring break, and summer, unless Mother agreed to such extended time.  The trial court ordered Father to pay child support in the amount of $2,154.95 per month, plus a 2% processing charge.  The trial court found Father in contempt solely for failing to pay his child support obligation through wage withholding, imposed a $250.00 fine, and ordered Father to pay Mother $575.00 for attorney fees and costs expended to prosecute the contempt motion.  Father appealed, raising five assignments of error for review.  Some assignments of error are consolidated to facilitate review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ABUSED ITS DISCRETION BY (1) ELIMINATING MR. MORROW'S WEDNESDAY, THANKSGIVING, SPRING AND CHRISTMAS BREAK PARENTING TIME, AND (2) RESTRICTING MR. MORROW'S VISITATION WITH HIS CHILDREN TO ALTERNATING DAYS OF SPECIAL MEANING/HOLIDAYS AND EVERY OTHER WEEKEND UNLESS MS. BECKER AGREES TO ADDITIONAL VISITATION, THEREBY COMMITTING REVERSIBLE ERROR AND VIOLATING MR. MORROW'S RIGHTS UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY MISINTERPRETING THE MAGISTRATE'S DECISION, THEREBY COMMITTING REVERSIBLE ERROR AND VIOLATING MR. MORROW'S RIGHTS UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

{¶6} Father argues that the trial court abused its discretion by modifying his parenting time with the children. Specifically, Father argues that the trial court erred by misinterpreting the magistrate's decision, reducing his parenting time, and leaving the issue of additional visitation to Mother's sole discretion. This Court disagrees.

{¶7} In cases where the matter was initially heard by a magistrate who issued a decision to which objections were filed and disposed, "[a]ny claim of trial court error must be based on the actions of the trial court, not on the magistrate's findings or proposed decision. In other words, the standards for appellate review do not apply to the court's acceptance or rejection of the magistrate's findings or proposed decision." *Mealey v. Mealey*, 9th Dist. No. 95CA0093, 1996 WL 233491 (May 8, 1996), *2. Civ.R. 53(D)(4)(d) requires the trial court to conduct an independent review of the record when ruling on objections. Civ.R. 53(D)(4)(b) allows the trial court to adopt or reject the magistrate's decision, in whole or in part, with or without modification. In this case, the trial court conducted the required independent review and issued its judgment based on that review. Because we are constrained to consider the issues on appeal as they arise out of the trial court's determinations and orders, Father's argument that the trial court misinterpreted the magistrate's decision is not well taken. The second assignment of error is overruled.

{¶8} As we recognized in Father's first appeal, "'A trial court's decision regarding visitation rights will not be reversed on appeal except upon a finding of an abuse of discretion.'"

*Morrow* at ¶ 8, quoting *Harrold v. Collier*, 9th Dist. No. 06CA0010, 2006-Ohio-5634, ¶ 6. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶9} First, Father argues that the trial court abused its discretion by reducing his parenting time by eliminating Wednesday evening visitation, as well as spring, Thanksgiving, and Christmas break parenting time.

{¶10} As an initial matter, the record indicates that, rather than reducing his parenting time, the trial court in fact increased Father's parenting time. Although the trial court eliminated the three-hour Wednesday evening visitation, it increased his bi-weekly weekend visitation to include an additional evening and overnight, which necessarily also gave him additional time on Monday morning with the children. Mother testified that both children suffer when faced with inconsistency and that Father's tardiness, failure to appear for some visits, and frequent absences due to international travel have disrupted their routines to their detriment. The evidence presented at the hearing demonstrated that Father made frequent trips to China which caused him to miss many scheduled visits with the children. In addition, Father missed some scheduled parenting time due to jet lag and his decision to attend Ohio State University football games instead of exercising visitation. Father admitted that his international travel would continue into the foreseeable future and that he could not commit to being available to spend every Wednesday evening with the children. In ordering the modification of parenting time, the trial court reasoned that eliminating the mid-week three-hour parenting time, while extending Father's

parenting time on alternate weekends was in the best interest of the children as it promoted consistency, stability, and structure for the children. Under the circumstances, this Court cannot say that the trial court abused its discretion when it so modified the parenting time order.

{¶11} Moreover, Father is incorrect in his assertion that the trial court eliminated his parenting time during spring, Thanksgiving, and Christmas breaks. The trial court ordered that "holidays and days of special meaning are to be divided as the parties agree or, if no agreement can be reached, pursuant to the Court's Standard Parenting Time Order." The Medina County Domestic Relations Court Standard Parenting Time Schedule, attached to the trial court's judgment, sets out a "Holiday Parenting Time" schedule in section II. That section identifies "Holiday[s]" including "Spring Break," "Thanksgiving," and "Winter break." Because these times are expressly designated as "holidays," the trial court's order entitles Father to visitation as delineated pursuant to the schedule, unless the parties agree to modify that parenting time. The trial court's standard order sets forth two options for visitation during each of the above-referenced holidays and states that "in the event an option is not specified and the parties do not agree, then Option 1 shall be in effect." Therefore, pursuant to the plain language of the trial court's order and standard parenting time schedule, Father's parenting time during spring, Thanksgiving, and Christmas breaks has not been eliminated. Accordingly, his argument in that regard is not well taken.

{¶12} Second, Father argues that the trial court abused its discretion by leaving the issue of extended parenting time in the sole discretion of Mother. In support, Father relies on *Barker v. Barker*, 6th Dist. No. L-00-1346, 2001 WL 477267 (May 4, 2001), in which the appellate court concluded that the trial court abused its discretion by leaving the decision to reinstate the father's visitation in the sole discretion of the child's psychologist. The *Barker* court concluded

such an order was unreasonable, however, because the child's psychologist could withhold her consent for visitation based on matters beyond the father's control and because the psychologist had previously exhibited bias in favor of the mother. *Id.* at \*5. That is not the situation in this case.

**{¶13}** Here, the trial court ordered that "[Father] should receive no *extended* parenting time unless agreed to by [Mother]." (Emphasis added.) In contrast to *Barker*, the trial court did not empower Mother to determine whether Father could exercise parenting time at all. He clearly had the right to certain visitation with the children. Instead, the trial court merely acknowledged that Mother could allow Father to have additional time with the children beyond that which had been ordered. This Court concludes that the trial court did not abuse its discretion.

**{¶14}** Finally, Father complains that the trial court's parenting time order is biased against him because it penalizes him with forfeiture of parenting time if he is more than 30 minutes late when picking up the children for visitation. He argues that Mother, on the other hand, may disregard the times determined for exchange of the children with impunity.

**{¶15}** The trial court's order merely reiterates the court's local rule subsumed in the standard parenting time schedule under Section VI., captioned "Promptness." Loc.R. 6.05, Form 6.04A. The rule states in pertinent part: "The residential parent has no duty to wait for the nonresidential parent to pick up the children longer than thirty (30) minutes, unless the nonresidential parent notifies the residential parent that she/he will be late, and the residential parent agrees to remain available after the thirty (30) minute waiting period. A parent who is more than thirty (30) minutes late loses the parenting time period."

{¶16} The Ohio Supreme Court has held that state courts may adopt rules of local practice and that such local rules are enforceable as long as they are not inconsistent with the Ohio Rules of Civil Procedure. *Vance v. Roedersheimer*, 64 Ohio St.3d 552, 554 (1992); *see, also*, Ohio Constitution, Article IV, Section 5(B); Civ.R. 83; Sup.R. 5. Loc. R. 1.01 of the Local Rules of the Court of Common Pleas of Medina County, Domestic Relations Division, states that these rules "were promulgated by the Medina County Court of Common Pleas, Domestic Relations Division, pursuant to Article IV, Section 5(B) of the Ohio Constitution and Rule 5 of the Ohio Supreme Court Rules of Superintendence for the Courts of Common Pleas." Father has not argued that Loc.R. 6.05, which incorporates the standard parenting time schedule, is inconsistent with the Ohio Rules of Civil Procedure. Moreover, he has not demonstrated how such a local rule would be unenforceable.

{¶17} In addition, Father is incorrect in his assertion that Mother is free to delay his access to the children by disregarding the times designated for exchange. Mother is bound to comply with the court's orders regarding parenting time. If she refuses or otherwise fails to do so, Father may file a motion for contempt and Mother would be subject to contempt sanctions. Accordingly, Father's argument that the trial court's order is biased in favor of Mother is not well taken. The first assignment of error is overruled.

{¶18} For the above reasons, Father's first and second assignments of error are overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT REFUSED TO GRANT A CONTINUANCE AFTER MR. MORROW'S FORMER COUNSEL ABANDONED HIM ON THE EVE OF TRIAL, THEREBY COMMITTING REVERSIBLE ERROR AND VIOLATING MR. MORROW'S RIGHTS UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH

AMENDMENT OF THE U.S. CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

{¶19} Father argues that the trial court erred by denying his motion to continue the hearing on his motion to modify child support. Additionally, he argues that the denial of his request for a continuance violated his right to due process of law. This Court disagrees.

{¶20} It is well settled that the decision to grant or deny a continuance lies in the sound discretion of the trial judge. *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). The United States Supreme Court emphasized that "not every denial of a request for more time [] violates due process even if the party fails to offer evidences or is compelled to defend without counsel." *Ungar*, 376 U.S. at 589. Whether a denial of a request for a continuance is so arbitrary as to violate due process depends on the circumstances of the case, particularly the reasons articulated to the trial court in support of the request. *Id*. "In determining whether the trial court abused its discretion by denying a motion for a continuance, this court must 'apply a balancing test, weighing the trial court's interest in controlling its own docket, including facilitating the efficient dispensation of justice, versus the potential prejudice to the moving party.'" *Kocinski v. Kocinski*, 9th Dist. No. 03CA008388, 2004-Ohio-4445, ¶ 10, quoting *Burton v. Burton*, 132 Ohio App.3d 473, 476 (3d Dist.1999).

{¶21} Father filed his motion to modify/reduce child support on August 4, 2009. The trial court scheduled a hearing on the motion on October 23, 2009. The hearing on Mother's motion to modify parenting time was subsequently scheduled for the same date and time. Father moved to extend the time in which he must respond to Mother's discovery requests until October 19, 2009, merely four days before the scheduled hearing. The hearing date was converted to a pretrial and the hearing was rescheduled for February 24 and 25, 2010. Father filed his witness and exhibit lists on February 11, 2010. Thirty-six minutes before the hearing was scheduled to

begin, Father filed a motion to continue because his attorney was involved in an ongoing complex trial in another court. The magistrate continued the hearing until May 21, 2010. On May 20, 2010, Father moved to continue the hearing due to his aunt's death on May 15, 2010, and an obligation to leave town for the funeral. The trial court bifurcated the motion hearings and continued the hearing on Mother's motion to modify parenting time to July 27, 2010, and continued the hearing on Father's motion to modify child support to August 10, 2010.

{¶22} On July 29, 2010, Father's attorney moved to withdraw from further representation. The trial court granted the motion. The record contains a signed letter from Father to the magistrate in which Father asserted that he did not challenge his attorney's withdrawal, that he had secured alternate counsel, and that his new attorney would be prepared for the hearing on August 10, 2010. On August 2, 2010, Father's new attorney filed a notice of appearance, a supplemental witness and exhibit list, and a motion to continue the hearing. In support of a continuance, Father's attorney asserted that he needed additional time to review documents and provide Mother's counsel with a supplemental witness and exhibit list. He further asserted that Father would be unfairly prejudiced by the inability to call any additional witnesses he might disclose in a supplemental witness list. Father did not suggest a new date for the hearing. The magistrate denied the motion to continue on August 4, 2010. The same day, Father's attorney filed a second supplemental witness and exhibit list. Father's attorney orally renewed his motion to continue immediately prior to the hearing. The magistrate again denied the motion.

{¶23} Based on a review of the circumstances of this case, this Court cannot say that the domestic relations court abused its discretion by denying Father's August 2, 2010 motion to continue the hearing on his motion to modify child support. Father filed his motion nearly a year

earlier, at a time he believed he could present evidence to justify the reduction. He moved for multiple prior continuances, which the court granted. Father's attorney did not move to withdraw on the "eve of trial," as Father asserts, but rather twelve days prior to trial. Father informed the magistrate by letter the following day that he had secured new counsel who "will prepare and be prepared for the hearing on August 10, 2010 regarding the modification of child support." Father's new counsel filed two supplemental witness and exhibit lists and requested leave to file a third supplement. Although the trial court denied leave to file the third supplement, Father was not precluded from presenting any evidence at the hearing, even over Mother's objection that he had not identified such evidence prior to hearing. Father was permitted to file two supplemental witness and exhibits beyond the deadline, and he was not precluded from presenting any witnesses at the hearing.

{¶24} Given the indefinite nature of the requested continuance, Father's role in creating the circumstances giving rise to the latest request, the inconvenience of repeated delays and uncertainty for Mother, the trial court's right to control its docket coupled with the efficient dispensation of justice outweighs any potential prejudice to Father. *See Kocinski* at ¶ 10. In fact, because Father was not precluded from presenting all evidence and testimony he desired, he has not demonstrated that he was prejudiced at all, let alone unfairly. Although he argues that he had no time "to investigate the approximately $25,000 of unknown funds deposited into [Mother's] bank account in 2009[,]" he presented copies of Mother's bank statements evidencing such activity on her account and was able to cross-examine Mother extensively on the issue. Accordingly, the denial of a continuance did not violate Father's right to due process, and the trial court did not abuse its discretion by denying Father's third motion for a continuance. Father's third assignment of error is overruled.

**ASSIGNMENT OF ERROR IV**

THE TRIAL COURT ABUSED ITS DISCRETION BY (1) IMPUTING AN ADDITIONAL $16,756 OF INCOME FOR CORPORATE BENEFITS WHEN CALCULATING MR. MORROW'S CHILD SUPPORT OBLIGATION (2) AVERAGING MR. MORROW'S AND MS. BECKER'S INCOME OVER THE PRIOR THREE YEARS THEREBY IMPUTING A GROSS INCOME THAT DOES NOT ACCURATELY REFLECT CURRENT EARNINGS OR EITHER PARTY AND (3) IGNORING THE BASIC CHILD SUPPORT SCHEDULE AND TREATING THE INSTANT ACTION ON A CASE-BY-CASE BASIS. THUS, THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND VIOLATED MR. MORROW'S RIGHTS UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

{¶25} Father argues that the domestic relations court abused its discretion in its calculation of child support. Specifically, Father argues that the trial court erred by (1) including corporate benefits in his gross income, (2) averaging the parties' incomes and imputing income to Father, and (3) establishing child support outside the basic child support schedule. This Court disagrees.

{¶26} As an initial matter, a trial court's decision regarding child support obligations will not be overturned absent a showing of an abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989).

Corporate benefits as income

{¶27} Father argues that the trial court erred by including $16,756 as company benefits as part of his gross income for purposes of determining his child support obligation. That amount consisted of the annual values of a company car ($9,600), insurance ($4,356), a cell phone ($1,200), and Ohio State University football tickets ($1,600). The trial court did not include the value of the laptop computer provided to Father by his business.

{¶28} R.C. 3119.02 requires the court to calculate the child support obligation in accordance with the applicable child support computation worksheet. The worksheet requires that child support be based on the gross income of the parents. R.C. 3119.01(C)(7) defines "gross income" as "the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable * * *." The statute then sets out a non-exclusive list of the types of income included, for example, salaries, wages, tips, rents, interest, and pensions. The list concludes with "and all other sources of income." Moreover, the statute expressly includes "self-generated income" in a parent's gross income. However, certain types of income are expressly excluded from the definition of gross income. R.C. 3119.01(C)(7)(a)-(f). One such exclusion is "Nonrecurring or unsustainable income or cash flow items[.]" R.C. 3119.01(C)(7)(e).

{¶29} Father is the president of Ohio College of Massotherapy (OCM) and OCM Online. OCM is a non-profit corporation, while OCM Online is a for-profit corporation. Father receives a salary from both businesses. While those salaries are not distinguished clearly on his 2007 tax return, his 2008 tax return indicates he was paid a salary of $121,897 by OCM and $110,316 by OCM Online. He testified that he received certain non-monetary benefits from his employment, including a Lexus automobile, car insurance, a cell phone, and a laptop computer. He also admitted that the company buys four-seat season tickets for Ohio State University football games, but claimed those were a perk for "my" employees but a necessary business expense for himself when he attended games. It is not entirely clear whether OCM provided these benefits to Father or whether he received them from employment with both OCM and OCM Online.

{¶30} Father does not dispute that the monetary value of the above benefits comports with the trial court's finding. Rather, he argues that none of the above benefits should have been included in the calculation of his gross income. Specifically, he argues that the value of such benefits could only be included as "self-generated income" pursuant to R.C. 3119.01(C)(13), and that that provision is not applicable because Father has not received those benefits as "gross receipts received * * * from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents[.]" Because R.C. 3119.01(C)(13) includes in the definition of self-generated income expense reimbursements and in-kind payments such as company cars, Father argues that such benefits are necessarily excluded as gross income under R.C. 3119.01(C)(7).

{¶31} This Court does not agree that reimbursements and in-kind payments such as company cars may only be included as gross income if a parent is self-employed or has an ownership interest in the business merely because R.C. 3119.01(C)(13) lists examples of such benefits. There is nothing in the statute which indicates that the provision of company cars, housing, meals, or other benefits may only be considered as gross income under the limited circumstances where a parent receives them as self-generated income. R.C. 3119.01(C)(7) expressly includes "all other sources of income" in the definition of gross income without regard for the parent's employment circumstances. R.C. 3119.01(C)(7) identifies six types of income expressly excluded from the definition of gross income. None of those exclusions mention benefits of the type included in the trial court's calculation of Father's gross income. "Inasmuch as the legislature chose not to include such an exception it must be presumed that none was intended." *Patton v. Diemer*, 35 Ohio St.3d 68, 70 (1988). Accordingly, even assuming that

Father received the above benefits from OCM, a non-profit corporation in which he necessarily had no ownership interest, there is no statutory support for excluding the value of those benefits.

{¶32} On the other hand, if Father received those benefits from his employment with OCM Online, a for-profit corporation in which he had an ownership interest, the value of most of those benefits would necessarily be included in his gross income as self-generated income because the benefits "are significant and reduce personal living expenses." *See* R.C. 3119.01(C)(13).

{¶33} In either event, Father testified that he had no other car or cell phone for personal use. He admitted that he had no land line telephone at home. He testified that the company paid for his car insurance. He admitted in his appellate brief that he would lose the benefit of these items if he lost his job. He would, therefore, have to pay for such items out of pocket. Accordingly, the trial court did not abuse its discretion by including the value of these benefits as part of Father's gross income.

{¶34} On the other hand, in regard to the Ohio State tickets, Father testified that he provided the dates of the football games to his employees and asked them to let him know which games they were interested in attending. He further testified that he sometimes gives some tickets away to non-employees who have business with the companies. While Father attends some football games every season, he reasonably does not derive a personal benefit from all four seats of every game. Therefore, while he derives some personal economic benefit, he does not derive the full $1,600 value of the tickets as a benefit. He did not, however, testify regarding how many tickets he used for himself and his personal guests, such as his child Mo. Accordingly, the trial court erred by including that entire amount in his gross income. However, based on our resolution of the remaining issues in this assignment of error and the negligible

result the slightly reduced income would have on Father's child support obligation, any error was harmless.

Imputation of income and income averaging

{¶35} Father argues that the trial court erred because it averaged his income from the prior three years and imputed the averaged income to him without making an express finding that he was underemployed. He further argues that the trial court erred by averaging Mother's income to calculate her gross income.

{¶36} R.C. 3119.01(C)(5) defines "income" depending on the circumstances of the parent: "(a) For a parent who is employed to full capacity, the gross income of the parent; (b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent." This Court has consistently held that a trial court must expressly find a parent to be voluntarily unemployed or underemployed before imputing income to that parent. *Misleh v. Badwan*, 9th Dist. No. 24185, 2009-Ohio-842, ¶ 7, citing *Musci v. Musci*, 9th Dist. No. 23088, 2006-Ohio-5882, ¶ 17. However, in this case, the trial court did not impute income to Father. Instead, the trial court averaged Father's income based on fluctations in his income. Father's reliance on law that requires the trial court to make an express finding of voluntary underemployment before averaging income is misplaced.

{¶37} R.C. 3119.05(H) states: "When the court or agency calculates gross income, the court or agency, when appropriate, may average income over a reasonable period of years." This Court had held that the decision as to the propriety of averaging a parent's income lies in the sound discretion of the trial court which is in the best position to weigh the facts and circumstances. *Akin v. Akin*, 9th Dist. Nos. 25524, 25543, 2011-Ohio-2765, ¶ 13; *Krone v. Krone*, 9th Dist. No. 25450, 2011-Ohio-3196, ¶ 32.

{¶38} Father testified that his income has fluctuated based on the recent decrease in student enrollment. His accountant testified that the businesses have recently rebounded after the economic downturn. Father testified as to the changes he made in the year before the hearing to cut business overhead, and the accountant testified that those actions greatly improved the companies' financial positions. Under the circumstances, the trial court did not abuse its discretion by averaging Father's income from the prior three years based on the fluctuations in his income.

{¶39} Father further argues that the trial court erred by averaging Mother's income because her income has steadily increased rather than fluctuated. His argument is not supported by the record. Mother's tax returns submitted into evidence indicated that Mother's adjusted gross income was $58,588 in 2007, $42,212 in 2008, and $51,716 in 2009. She testified that she received a one-time $500 employee of the month bonus and a one-time $5000 employee of the year bonus in 2009. By averaging Mother's income over the past three years, properly not including the bonuses as nonrecurring or unsustainable income pursuant to R.C. 3119.01(C)(7)(e), the trial court arrived at an amount nearly $3000 more than it would have had it merely used Mother's gross income from 2009 minus the nonrecurring income. By doing so, a higher percentage of the support obligation was attributed to Mother, thereby inuring a benefit to Father. Under the circumstances, the trial court did not abuse its discretion by averaging Mother's income from the prior three years based on fluctuations in her income.

Basic child support schedule

{¶40} Father argues that the trial court erred by failing to apply the basic child support schedule because the parents' combined gross income was not more than $150,000.

{¶41} R.C. 3119.021 sets out the basic child support schedule which must be used to calculate child support unless the parents' combined gross income is less than $6,600 or more than $150,000. R.C. 3119.04(B) states, in relevant part: "If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court * * * shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents."

{¶42} Father argues that the trial court was precluded from determining his child support obligation on a case-by-case basis because the combination of the parents' actual income is less than $150,000. He argues that, because R.C. 3119.01(C)(7) defines gross income as income earned during a calendar year, the trial court erred by using the parties' averaged incomes. This Court has already concluded that the trial court did not err by averaging the parents' prior three years' incomes to determine their annual gross incomes. The average of Father's prior three years' incomes was $143,622, while Mother's was $49,954, resulting in a combined gross income of $193,576 for the parents. Accordingly, the trial court was required to determine Father's child support obligation on a case-by-case basis.

{¶43} Father further argues that his child support obligation is more than 50% of his current take home pay. In support, he cites *Siebert v. Tavarez*, 8th Dist. No. 88310, 2007-Ohio-2643, ¶ 36, for the proposition that the trial court must "ensure that the obligor parent is not so overburdened by child support payments that it affects that parent's ability to survive." Father fails, however, to explain how his current obligation impacts his ability to survive.

{¶44} On the other hand, the evidence adduced at trial demonstrated that Father continued to live well. He recently bought a $405,000 home with a pool on which he was able to

make an $80,000 down payment even before he sold his prior home for $260,000. He made certain improvements to the property and acquired new furnishings. Father was driving a Lexus automobile, furnished by OCM, as well as an $11,000 motorcycle for which he paid cash. He continued to travel internationally, ostensibly for business, although he had not secured any new business opportunities from his numerous and frequent trips to China. Moreover, even though Father recently voted to decrease his salary, because of the control he exerts on the board of trustees for the college, he retains considerable power to establish his salary. He did not testify that his recent decrease in salary caused him to downsize his lifestyle in any way.

{¶45} Moreover, Father cites no law to show that withholding of "over 50%" is not permissible under these circumstances. In fact, in a garnishment context, 15 U.S.C. 1673(b)(2)(B) would allow withholding of up to 60% of Father's disposable earnings as he is not supporting a spouse or other dependent children. Accordingly, Father's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR V

> THE TRIAL COURT ABUSED ITS DISCRETION BY FINDING MR. MORROW IN CONTEMPT, THEREBY COMMITTING REVERSIBLE ERROR AND VIOLATING MR. MORROW'S RIGHTS UNDER THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION.

{¶46} Father argues that the trial court erred by finding him in contempt for failing to pay his child support obligation through wage withholding. This Court agrees.

{¶47} This Court reviews contempt proceedings for an abuse of discretion. *Akin* at ¶ 44, citing *Thomarios v. Thomarios*, 9th Dist. No. 14232, 1990 WL 1777 (Jan. 10, 1990). An abuse of discretion connotes that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore*, 5 Ohio St.3d at 219.

{¶48} As this Court previously recognized: "Contempt of court is defined as disobedience of an order of a court. It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Poitinger v. Poitinger*, 9th Dist. No. 22240, 2005-Ohio-2680, ¶ 31, quoting *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55 (1971), paragraph one of the syllabus. Although contempt is generally classified as either civil or criminal to facilitate review, the Ohio Supreme Court has recognized that contempt proceedings are sui generis, i.e., neither wholly civil nor wholly criminal. *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 253. The *Brown* court elaborated:

> While both types of contempt contain an element of punishment, courts distinguish criminal and civil contempt not on the basis of punishment, but rather, by the character and purpose of the punishment. Punishment is remedial or coercive and for the benefit of the complainant in civil contempt. Prison sentences are conditional. The contemnor is said to carry the keys of his prison in his own pocket, since he will be freed if he agrees to do as ordered. Criminal contempt, on the other hand, is usually characterized by an unconditional prison sentence. Such imprisonment operates not as a remedy coercive in its nature but as punishment for the completed act of disobedience, and to vindicate the authority of the law and the court. Therefore, to determine if the sanctions in the instant cause were criminal or civil in nature, it is necessary to determine the purpose behind each sanction: was it to coerce [Father] to obey the [child support order], or was it to punish [him] for past violations?

(Internal citations omitted.) *Id.* at 253-254.

{¶49} In this case, the trial court fined Father after finding that he had failed to pay his child support through wage withholding. However, the court gave him the opportunity to purge his contempt and avoid paying the fine by establishing wage withholding within thirty days of the court's judgment. Because the trial court's punishment was remedial and coercive in nature, and Father had the opportunity to purge the contempt, it was civil in nature. In civil contempt proceedings, a finding of contempt must be premised on clear and convincing evidence. *Romans*

*v. Romans*, 9th Dist. No. 23181, 2006-Ohio-6554, ¶ 9. This Court has long recognized that the movant's burden of proving a prima facie case of contempt may be met by producing the order and proof of the contemnor's failure to comply. *Rossen v. Rossen*, 2 Ohio App.2d 381, 383-384 (9th Dist.1964).

{¶50} Mother alleged in her contempt motion that Father had failed to pay child support and that he had failed to effect the mandatory wage withholding. The trial court found Father in contempt solely on the basis that he had failed to pay his child support obligation by wage withholding "as ordered by this Court and pursuant to the Ohio Revised Code." The domestic relations court cited to the parties' March 30, 2005 agreed judgment entry which addressed interim issues of parenting time and child support pending trial to ultimately resolve those issues. The March 30, 2005 entry ordered Father to pay child support by wage withholding through the Ohio Child Support Payment Central, in Columbus. That entry included the following order in bold font: "All child support and spousal support under this order shall be withheld or deducted from the income or assets of the Obligor pursuant to a withholding or deduction notice or appropriate court order issued in accordance with Section 3121.03 of the Ohio Revised Code." Mother cited neither the March 30, 2005 order nor R.C. 3121.03 in her contempt motion.

{¶51} On March 1, 2006, the domestic relations court issued a final judgment in which it designated Mother as the residential parent, ordered parenting time for Father, and ordered Father to pay child support. The child support order stated: "Effective October 1, 2005, Mr. Morrow shall pay child support through the Medina County Child Support Enforcement Agency in the amount of $2,198.05 per month, which includes 2% processing fee." There was no order that the support be paid through wage withholding. Moreover, the March 1, 2006 order did not

include any notice identical or similar to the notice in the March 30, 2005 order, referencing R.C. 3121.03 or otherwise mentioning wage withholding.

{¶52} Mother relied on the March 1, 2006 order for her allegation that Father was required to pay child support by wage withholding. However, at the hearing, Mother admitted that the current order for child support ordered Father to pay CSEA directly, not by wage withholding.

{¶53} Mother failed to present clear and convincing evidence that Father violated the current child support order. Before a party may be held in contempt for disobeying a court order, the prior order "'must spell out the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him.'" *Collette v. Collette*, 9th Dist. No. 20423, 2001 WL 986209 (Aug. 22, 2001). The interim child support order issued on March 30, 2005, was superseded by the final judgment issued on March 1, 2006. While the interim order ordered Father to pay child support by wage withholding to the central agency in Columbus, the final judgment ordered Father to pay child support directly to Medina County CSEA. Moreover, the final judgment made no reference to R.C. 3121.03 or any other code provision which would have put Father on notice of any obligation to pay child support by wage withholding. Accordingly, the domestic relations court erred when it found Father in contempt for failing to pay child support by wage withholding based on the evidence adduced at trial. Father's fifth assignment of error is sustained.

## III.

{¶54} Father's first, second, third, and fourth assignments of error are overruled. Father's fifth assignment of error is sustained. The judgment of the Medina County Court of

Common Pleas, Domestic Relations Division, is affirmed in part and reversed in part, and the cause remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
Reversed in part,
And cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

DONNA J. CARR
FOR THE COURT

WHITMORE, P. J.
BELFANCE, J.
CONCUR.

APPEARANCES:

JOHN C. RAGNER, Attorney at Law, for Appellant.

LINDA HOFFMAN, Attorney at Law, for Appellee.