[Cite as *Suppan v. Suppan*, 2020-Ohio-6883.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

SARAH L. SUPPAN

    Appellant

    v.

JASON N. SUPPAN

    Appellee

C.A. No.      20AP0005

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.    2014 DR-A 000382

DECISION AND JOURNAL ENTRY

Dated: December 28, 2020

CARR, Presiding Judge.

{¶1} Appellant Sarah Suppan appeals from the judgment of the Wayne County Court of Common Pleas, Domestic Relations Division. This Court affirms in part, reverses in part, and remands the matter for proceedings consistent with this decision.

I.

{¶2} Unfortunately, this matter has a long, litigious history. Ms. Suppan and Dr. Jason Suppan married in July 1997. Two children were born of the marriage, a daughter in October 1998, and a son in July 2000. Thus, both children are now adults.

{¶3} On October 30, 2014, Ms. Suppan filed a complaint for divorce. In her complaint, she sought temporary and permanent child and spousal support. The parties agreed that Dr. Suppan would pay Ms. Suppan $2,200.00 per month in temporary support and that the payment would be treated as alimony for purposes of the Internal Revenue Code.

{¶4} The matter proceeded to a hearing before a magistrate, who issued a decision on October 11, 2016. The trial court issued a judgment entry the same day. Effective October 15, 2016, child support was set at $400.00 per month, which represented a deviation from the guideline amount, and spousal support was ordered to be $1,600.00 per month for 70 months. Commercial property owned by the parties, which was adjacent to the building where Dr. Suppan had his podiatry practice, was ordered to be sold. The entry provided:

> The parties own a commercial property located [in Orrville, Ohio]. Currently, the property is leased through November 2016. The parties agreed that the property should be sold. At the time of the final hearing, the parties received rent in the amount of $2,400 which covered the mortgage and costs related to the property. All checks received from the lessee should be deposited in the joint account and the minimum monthly mortgage payment should be paid from this account as well as any additional costs related to the property. If the property sells and any funds remain in the joint account, the parties should equally divide those funds and then close the account. If at any time the property is vacant, the parties shall each be responsible for one half of the costs associated with the property. Each party shall deposit their one half share into the joint account and all payments for the mortgage and related costs shall be made from the joint account.
>
> The property should immediately be listed for sale within 14 days of the final judgment entry. Based on the appraisals provided by the parties, the fair market value should be $262,500.00. The property should be listed at this price unless it is determined by an agreed upon real estate agent that the price should be adjusted in order to acquire a sale in the fastest and most cost effective way possible. At the time of the final hearing there was a balance of $211,397 due and owing to First National Bank. The parties should accept any offer at or above the amount which would cover the First National Bank debt and any costs associated with the sale, unless the parties are otherwise able to agree. The parties shall divide any net proceeds or deficiencies after expenses of the sale have been paid.
>
> If the parties are unable to sell the property within six months of putting the building on the market, the parties should sell the building through an absolute auction. The absolute auction should be held within 30 days of removing the property from the real estate market. The parties shall divide any net proceeds or deficiencies after the expenses of the sale have been paid.
>
> The court shall retain jurisdiction over this issue.

{¶5} Both Ms. Suppan and Dr. Suppan filed objections to the magistrate's decision. The trial court sustained one of Dr. Suppan's objections but overruled the remainder of the objections.

Ms. Suppan appealed the trial court's judgment. Thereafter, the trial court entered a nunc pro tunc entry to include a previously omitted appendix. *See Suppan v. Suppan*, 9th Dist. Wayne No. 17AP0015, 2018-Ohio-2569, ¶ 2.

{¶6} This Court sustained a portion of Ms. Suppan's first assignment of error concluding that the Court was "unable to determine what consideration, if any, the trial court gave to the distributions Dr. Suppan received from Suppan Foot & Ankle Clinic when it determined his gross income for the purpose of determining the appropriate level of child support. Ms. Suppan raised this issue as an objection to the magistrate's decision, which was overruled by the trial court without further explanation or analysis." *Id.* at ¶ 9. We noted that, "[a]lthough the decision whether to average Dr. Suppan's income over a period of years was within the sound discretion of the trial court, it is not within a trial court's discretion to arbitrarily disregard a source of income." *Id.* Because this Court was "unable to determine if the trial court abused its discretion because no analysis [was] set forth for our review[,]" the Court sustained Ms. Suppan's assignment of error in part and remanded the matter for further consideration. *Id.*

{¶7} Given that determination, several other arguments were not considered by the Court including: whether the trial court erred in failing to calculate child support on a case-by-case basis and in failing to consider the needs and standard of living for the children as required when parental income exceeds $150,000.00 per year; whether the trial court erred in failing to make child support retroactive; whether the trial court erred in applying deviations from the basic child support guidelines; whether the trial court erred in decreasing child support from $2,200.00 per month to $1,600.00 per month; and whether the trial court erred in requiring her to pay her own attorney fees. *See id.* at ¶ 10-12, 47. In addition, this Court overruled several of Ms. Suppan's assignments of error, including one related to the parties' commercial building. *See id.* at ¶ 19, 30, 33, 39, 46.

{¶8} While the matter was pending in this Court, the child support enforcement agency issued findings and recommendations to terminate the administrative child support order as it pertained to the parties' daughter, thereby recommending to decrease the child support award to $200.00. Ms. Suppan requested an administrative termination hearing and asserted that the amount of child support was wrong. She argued that the deviation in the decree should be excluded. The administrative hearing decision noted that the termination was pursuant to R.C. 3119.89(B), which specifies that a review shall not be conducted pursuant to R.C. 3119.60 to 3119.76. Therefore, it concluded that the findings and recommendations did not contain a mistake. Ms. Suppan then requested a judicial hearing. In her request, she asserted that the amount of child support calculated was incorrect, the deviation was incorrect, and the incomes used were incorrect.

{¶9} In addition, on August 11, 2017, a consent entry was filed in the trial court. It was signed by the magistrate, the parties, and their attorneys. Inter alia, the agreement provided that

> [t]he parties further agree that because [Ms. Suppan] claims she does not have the wherewithal to pay her share of the monthly expenses associated with the commercial building [p]er the court order, that these expenses shall simply accrue, [Dr. Suppan] shall initially pay them, and she shall be responsible for reimbursing him out of her share of the property distribution she is awarded upon final determination of this case by the Court of Appeals. Provided however that [Ms. Suppan] shall begin paying her allocated share of the building expenses when she receives her property settlement from [Dr. Suppan,] if in fact that is prior to the time of final determination by the Court of Appeals. The issue of [Ms. Suppan's] payment of said expenses related to the commercial building remains before the Court of Appeals. If the Court of Appeals modifies the trial court's decision regarding [Ms. Suppan's] obligation to pay a share of the commercial building expenses, [Ms. Suppan] shall be reimbursed accordingly.

{¶10} On January 8, 2018, Dr. Suppan moved the trial court to find Ms. Suppan in contempt for failing to contribute her share of payments to the commercial building despite being paid her share of the property distribution. The record reflects that Dr. Suppan paid Ms. Suppan her portion of the property distribution at the end of August 2017. On January 16, 2018, Ms.

Suppan made a payment of $5,975.49 to the bank that held the mortgage on the property; that payment represented 6 months' worth of her share of mortgage payments. On January 22, 2018, Ms. Suppan filed a motion seeking to have Dr. Suppan held in contempt for failing to reimburse her for the children's uninsured medical expenses and other expenses, for failing to cooperate in the sale or lease of the commercial building, and for failing to abide by the right of first refusal in the parties' shared parenting plan. In October 2018, Dr. Suppan filed a second motion seeking to hold Ms. Suppan in contempt for failing to pay the commercial building expenses as well as expenses for the children.

{¶11} After the commercial building did not sell at auction, Ms. Suppan filed a motion for immediate relief. Thereafter, the magistrate entered an order and decision providing that it was reasonable for the parties to attempt to sell the commercial property via reserve auction, reserving the minimal amount owed on the mortgage. The magistrate ordered the auction should be conducted by Kiko Auctioneers and the parties should continue to each pay one-half of the expenses until sold.

{¶12} Following hearings held in December 2018, at which testimony regarding all pending matters was taken, the magistrate issued a decision on May 16, 2019, and the trial court issued a judgment entry the same day. The trial court concluded there were no errors of law or other defects on the face of the decision. Like the magistrate, the trial court found that distributions from Dr. Suppan's Suppan Foot & Ankle Clinic, Inc., an S corporation he owned, constituted bonuses under R.C. 3119.05(D), thereby requiring it to include the lesser of the yearly average of all bonuses received during the three years prior to the support calculation or the total bonuses received during the year immediately prior to the support calculation. The three-year average of his distributions was calculated to be $42,248.00 and the 2014 distribution was calculated to be

$28,601.00. Thus, the magistrate and trial court concluded that the lesser of the two, $28,601.00, was to be added as part of Dr. Suppan's income. Dr. Suppan's income was calculated to be $142,149.00 and a 70% deviation was determined to be reasonable for purposes of child support. From October 15, 2016 until the daughter's emancipation on May 28, 2017, Dr. Suppan was ordered to pay $576.25 per month in child support. Following the daughter's emancipation, child support was set at $420.67 per month. Dr. Suppan was ordered to pay $2,200.00 per month in spousal support for 70 months. Neither side was awarded attorney fees.

{¶13} Ms. Suppan was found in contempt for failure to pay the expenses for the commercial building. Ms. Suppan was ordered to pay $18,296.00, which the magistrate calculated to be one-half the mortgage and one-half the real estate taxes for 2017 and 2018. However, Ms. Suppan was given credit for a $5,975.49 payment. Ms. Suppan was also ordered to pay $1,250.00 for Dr. Suppan's attorney fees incurred in pursuing the contempt motion. Dr. Suppan was not found to be in contempt.

{¶14} Ms. Suppan filed objections to the magistrate's decision, which she later supplemented. Dr. Suppan also filed objections to the magistrate's decision. On January 28, 2020, the trial court filed an entry overruling the parties' objections.

{¶15} Ms. Suppan has appealed, raising six assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN CALCULATING DR. SUPPAN'S INCOME
FOR PURPOSES OF CHILD AND SPOUSAL SUPPORT.

{¶16} Ms. Suppan argues in her first assignment of error that the trial court erred in calculating income for purposes of child and spousal support. Specifically, she maintains that the

trial court erred by determining that the distributions Dr. Suppan received from Suppan Foot & Ankle Clinic, Inc. qualified as bonuses that were subject to inclusion pursuant to R.C. 3119.05(D).

{¶17} The record is clear that the trial court applied R.C. 3119.05(D) to the distributions Dr. Suppan received. Pursuant to R.C. 3119.01, income means, "either of the following: (a) For a parent who is employed to full capacity, the gross income of the parent; (b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent and any potential income of the parent." Former R.C. 3119.01(C)(5); R.C. 3119.01(C)(9). Gross income is,

> the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; disability insurance benefits; benefits that are not means-tested and that are received by and in the possession of the veteran who is the beneficiary for any service-connected disability under a program or law administered by the United States department of veterans' affairs or veterans' administration; spousal support actually received; and all other sources of income. "Gross income" includes income of members of any branch of the United States armed services or national guard, including, amounts representing base pay, basic allowance for quarters, basic allowance for subsistence, supplemental subsistence allowance, cost of living adjustment, specialty pay, variable housing allowance, and pay for training or other types of required drills; self-generated income; and potential cash flow from any source.

Former R.C. 3119.01(C)(7); R.C. 3119.01(C)(12).

{¶18} R.C. 3119.05(D) provides that,

> [w]hen the court or agency calculates the gross income of a parent, it shall include the lesser of the following as income from overtime and bonuses:
>
> (1) The yearly average of all overtime, commissions, and bonuses received during the three years immediately prior to the time when the person's child support obligation is being computed;
>
> (2) The total overtime, commissions, and bonuses received during the year immediately prior to the time when the person's child support obligation is being computed.

**{¶19}** Because the trial court concluded R.C. 3119.05(D) applied to Dr. Suppan's distributions, the trial court concluded that it was required to include the lesser of the average of Dr. Suppan's distributions and the total distributions from the prior year. Thus, the trial court determined that R.C. 3119.05(D) required the trial court to include $28,601.00 (Dr. Suppan's distribution from 2014) in Dr. Suppan's income, as opposed to $42,248.00 (the three-year average of Dr. Suppan's distributions).

**{¶20}** However, because we conclude that Dr. Suppan's distributions were not bonuses, we conclude that the trial court erred in considering them pursuant to R.C. 3119.05(D). The application of R.C. 3119.05(D) is limited to bonuses, overtime, and commissions. *See A.S. v. J.W.*, 157 Ohio St.3d 47, 2019-Ohio-2473, ¶ 14-17. A corporate distribution is defined as "[a] corporation's direct or indirect transfer of money or other property, or incurring of indebtedness to or for the benefit of its shareholders, such as a dividend payment out of current or past earnings." *Black's Law Dictionary* (11th Ed.2019). Whereas a bonus is defined as a "premium paid in addition to what is due or expected; esp., a payment by way of division of a business' profits, given over and above normal compensation * * *. In the employment context, workers' bonuses are not a gift or gratuity; they are paid for services or on consideration in addition to or in excess of the compensation that would ordinarily be given." *Id.* Here, Dr. Suppan received money from Suppan Foot & Ankle Clinic, Inc., an S Corporation, because he was a shareholder, not because he was an employee.

**{¶21}** This view also finds support in case law from our colleagues in the Tenth District. In *Kuper v. Halbach*, 10th Dist. Franklin No. 09AP-899, 2010-Ohio-3020, ¶ 73, the appellant argued that her shareholder distributions fell into the category of overtime, commissions, and bonuses governed by R.C. 3119.05(D), and, that the trial court erred in averaging that income.

The Tenth District quickly disposed of appellant's argument by concluding that her shareholder distributions did not constitute overtime, commissions, or bonuses for purposes of R.C. 3119.05(D). *Id.*

{¶22} Here, because the trial court incorrectly determined that it was bound to apply R.C. 3119.05(D) to Dr. Suppan's distributions, we agree that the trial court erred in calculating Dr. Suppan's income. Upon remand, the trial court should evaluate the distributions without being limited by the constraints of R.C. 3119.05(D).

{¶23} Ms. Suppan's first assignment of error is sustained.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY AWARDING A 70% DOWNWARD DEVIATION ON CHILD SUPPORT TO DR. SUPPAN.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED BY NOT MAKING CHILD SUPPORT RETROACTIVE TO DECEMBER 31, 2014.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED BY AWARDING MS. SUPPAN ONLY $2,200 PER MONTH IN SPOUSAL SUPPORT.

## ASSIGNMENT OF ERROR VI

THE TRIAL COURT ERRED BY ORDERING EACH PARTY TO PAY THEIR OWN ATTORNEY'S FEES. [Sic.]

{¶24} Ms. Suppan's second through fourth and sixth assignments of error involve issues that are not properly before this Court in light of this Court's decision to sustain Ms. Suppan's first assignment of error. *See Suppan*, 2018-Ohio-2569, ¶ 11-12, 47. Thus, this Court declines to address them at this time. *See id.*

**ASSIGNMENT OF ERROR V**

THE TRIAL COURT ERRED BY FINDING MS. SUPPAN IN CONTEMPT, AND BY NOT FINDING DR. SUPPAN IN CONTEMPT.

{¶25} Ms. Suppan argues in her fifth assignment of error that the trial court erred in finding her in contempt with respect to her failure to pay her share of the commercial building expenses and by not finding Dr. Suppan in contempt due to his failure to cooperate in the sale and lease of the building and his failure to pay certain medical expenses of the children.

{¶26} "We review a trial court's contempt finding for an abuse of discretion. *Weber v. Devanney,* 9th Dist. Summit No. 29374, 2020-Ohio-4450, ¶ 7, citing *Morrow v. Becker*, 9th Dist. Medina No. 11CA0066-M, 2012-Ohio-3875, ¶ 47. "Contempt of court is defined as disobedience of an order of a court. It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." (Internal quotations and citations omitted.) *Weber* at ¶ 7, quoting *Morrow* at ¶ 48.

{¶27} The parties' decree provided:

The parties own a commercial property located [in Orrville, Ohio]. Currently, the property is leased through November 2016. The parties agreed that the property should be sold. At the time of the final hearing, the parties received rent in the amount of $2,400 which covered the mortgage and costs related to the property. All checks received from the lessee should be deposited in the joint account and the minimum monthly mortgage payment should be paid from this account as well as any additional costs related to the property. If the property sells and any funds remain in the joint account, the parties should equally divide those funds and then close the account. If at any time the property is vacant, the parties shall each be responsible for one half of the costs associated with the property. Each party shall deposit their one half share into the joint account and all payments for the mortgage and related costs shall be made from the joint account.

The property should immediately be listed for sale within 14 days of the final judgment entry. Based on the appraisals provided by the parties, the fair market value should be $262,500.00. The property should be listed at this price unless it is determined by an agreed upon real estate agent that the price should be adjusted in order to acquire a sale in the fastest and most cost effective way possible. At the time of the final hearing there was a balance of $211,397 due and owing to First

National Bank.  The parties should accept any offer at or above the amount which would cover the First National Bank debt and any costs associated with the sale, unless the parties are otherwise able to agree.  The parties shall divide any net proceeds or deficiencies after expenses of the sale have been paid.

If the parties are unable to sell the property within six months of putting the building on the market, the parties should sell the building through an absolute auction.  The absolute auction should be held within 30 days of removing the property from the real estate market.  The parties shall divide any net proceeds or deficiencies after the expenses of the sale have been paid.

The court shall retain jurisdiction over this issue.

{¶28}  In August 2017, the parties also entered into a consent agreement which stated:

The parties further agree that because [Ms. Suppan] claims she does not have the wherewithal to pay her share of the monthly expenses associated with the commercial building [p]er the court order, that these expenses shall simply accrue, [Dr. Suppan] shall initially pay them, and she shall be responsible for reimbursing him out of her share of the property distribution she is awarded upon final determination of this case by the Court of Appeals.  Provided however that [Ms. Suppan] shall begin paying her allocated share of the building expenses when she receives her property settlement from [Dr. Suppan,] if in fact that is prior to the time of final determination by the Court of Appeals.  The issue of [Ms. Suppan's] payment of said expenses related to the commercial building remains before the Court of Appeals.  If the Court of Appeals modifies the trial court's decision regarding [Ms. Suppan's] obligation to pay a share of the commercial building expenses, [Ms. Suppan] shall be reimbursed accordingly.

{¶29}  It is undisputed that the commercial property was without a tenant beginning December 2016 and that Ms. Suppan received her share of the property division at the end of August 2017.  The record discloses that Ms. Suppan failed to make any payments toward the commercial building expenses until January 16, 2018, after Dr. Suppan filed his first motion for contempt.  At that point, Ms. Suppan paid approximately 6 months' worth of mortgage payments directly to the bank.  Ms. Suppan failed to make any additional payments.

{¶30}  Ms. Suppan does not appear to dispute that she failed to make the required payments.  Instead, she points to Dr. Suppan's failure to lease the building as somehow off setting

her duty to pay. She also claims that her reading of the decree required her to only make 6 months of payments and that her reading is reasonable under the circumstances.

{¶31} Ms. Suppan has not demonstrated that the trial court abused its discretion by finding her in contempt. The record is clear that Ms. Suppan failed to comply with the requirements in the decree and consent agreement. The trial court was not unreasonable in determining that Ms. Suppan's reasons for non-payment were unavailing. Accordingly, we cannot say that the trial court abused its discretion in finding Ms. Suppan in contempt.

{¶32} Ms. Suppan additionally argues that even if she was properly found in contempt, the trial court erred in giving Dr. Suppan credit for payments he made in 2019 when the hearings were in December 2018. While the magistrate's and trial court's entries do mention 2019 in discussing how much money Dr. Suppan expended in mortgage payments, it appears that, when considering the numbers used, that date was a typo. More importantly, when the trial court actually determined the amount that Ms. Suppan was responsible for paying, it specifically only included 2017 and 2018 dates and gave Ms. Suppan credit for her $5,975.49 payment. Thus, we cannot say that Ms. Suppan demonstrated that the trial court gave Dr. Suppan credit for payments he made in 2019.

{¶33} Ms. Suppan additionally argues that the trial court should have held Dr. Suppan in contempt for failing to follow the trial court's orders with respect to the sale of the building and with respect to Dr. Suppan's failure to pay medical bills of the children.

{¶34} As to the commercial building, Ms. Suppan argues that Dr. Suppan turned away at least two possible tenants, but also notes that the trial court's orders did not require the parties to lease the building. Thus, we fail to see how Dr. Suppan's failure to lease the building should have resulted in contempt of court given Ms. Suppan's own admission. Ms. Suppan additionally points

out that Dr. Suppan failed to follow the trial court's order that the parties list the building with a realtor. In the magistrate's decision, which the trial court found to contain "sound" reasoning "supported by the law and the evidence[,]" the magistrate found that both parties failed to comply with the orders of the court as the property was not immediately listed for sale with a real estate agent. Thus, the magistrate and trial court found both parties at fault. While Ms. Suppan was found in contempt of court with respect to her conduct related to the commercial building, her only punishment related to her failure to pay the expenses related to the building, not with respect to the sale of the building. Given the discretion afforded to the trial court with respect to contempt, we cannot say that the trial court abused its discretion in failing to find Dr. Suppan in contempt with respect to the commercial building.

{¶35} With respect to the children's medical expenses, the magistrate closely examined Ms. Suppan's arguments. The magistrate noted that there was evidence supporting that Dr. Suppan had paid hundreds of dollars in medical bills for the children and that Ms. Suppan submitted bills for the children that included treatments for the parties' daughter after she was emancipated. In addition, the magistrate expressed frustration at the way the parties had handled the situation. The magistrate stated that it found

> the parties['] method of exchanging medical bills and expense information both misleading and inappropriate under the facts and circumstances. The Shared Parenting Plan specifically requires the parties to present Explanation of Benefits within thirty days, and [Dr. Suppan] to pay all uninsured medical expenses within the following thirty days. Upon review of the testimony and evidence, the date the medical expenses were exchanged is both uncertain and confusing. The request for reimbursement does not include an explanation of benefits, and does not demonstrate if the expenses were submitted for payment. The parties should exchange information via Our Family Wizard, including an explanation of benefits, within thirty days of treatment or receipt of the EOB, whichever is later, and [Dr. Suppan] shall pay or reimburse the same within thirty days.

> * * *

The Court does not find either party in contempt of the orders relative to uninsured medical expenses or the division of expenses pursuant to the Shared Parenting Plan at this time. The Court will retain jurisdiction over the issue.

{¶36} Essentially, Ms. Suppan argues that Dr. Suppan failed to pay certain medical bills and thus the trial court should have held him in contempt. However, Ms. Suppan's argument does not address the magistrate's findings that the timeliness of the requests and the documentation were not adhered to as required by the decree.

{¶37} Thus, we cannot say that Ms. Suppan has demonstrated that the trial court abused its discretion in declining to find Dr. Suppan in contempt for failing to pay certain medical expenses.

{¶38} Ms. Suppan's fifth assignment of error is overruled.

III.

{¶39} Ms. Suppan's first assignment of error is sustained. Given the foregoing, her second through fourth and sixth assignments of error are not properly before the Court at this time and will not be addressed. Her fifth assignment of error is overruled. The judgment of the Wayne County Court of Common Pleas, Domestic Relations Division, is affirmed in part, reversed in part, and the matter is remanded for proceedings consistent with this decision.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to equally to both parties.

DONNA J. CARR
FOR THE COURT

SCHAFER, J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

PATRICK L. BROWN, Attorney at Law, for Appellant.

LON R. VINION, Attorney at Law, for Appellee.