[Cite as *In re Orecchio*, 2010-Ohio-2849.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

IN THE MATTER OF: )
MARCO ANTONIO ORECCHIO, )
A MINOR CHILD, )
)         CASE NO.    09 JE 37
MARK ORECCHIO, )
)
    PLAINTIFF-APPELLANT, )
)
    - VS. - )         O P I N I O N
)
MARCI COLANTONI, )
)
    DEFENDANT-APPELLEE. )

CHARACTER OF PROCEEDINGS:     Civil Appeal from Common Pleas Court, Juvenile Division, Case No. 07PA157.

JUDGMENT:     Reversed and Remanded.

APPEARANCES:
For Plaintiff-Appellant:     Attorney Adrian Hershey
    4110 Sunset Boulevard
    Steubenville, Ohio  43952

For Defendant-Appellee:     Attorney Peter Olivito
    606-612 Sinclair Building
    Steubenville, Ohio  43952

JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated:  June 21, 2010

VUKOVICH, P.J.

¶{1} Plaintiff-appellant Mark Orecchio appeals the decision of the Jefferson County Juvenile Court overruling his objection to the Child Support Findings and setting Mark's child support obligation at $978.46 per month, plus the 2% processing fee. Mark finds fault with that computation because when the Jefferson County Child Support Enforcement Agency (JCCSEA) computed his gross income, it included the principal on his mortgage payments for his rental properties. He contends that this amount should not have been included because it is an ordinary and necessary expense, which by statute is permitted to be excluded. Thus, the issue in this case is whether the juvenile court abused its discretion in not excluding the mortgage principal as an ordinary and necessary expense. For the reasons expressed below, we find that Mark's argument has merit and thus, we reverse and remand the matter to the trial court for further proceedings.

¶{2} Although defendant-appellee Marci Colantoni did not file a cross-appeal in this case, she also seeks to have the trial court's judgment changed. Following the trial court's decision regarding Mark's child support obligation, the court ordered that the support obligation "shall be effective July 16, 2009." 11/05/09 J.E. She contends that that decision is incorrect because it should be retroactive to the date that she filed the motion to modify, April 10, 2008. Since Marci did not comply with App.R. 3(C) for filing a cross-appeal, this issue is waived and is not addressed.

<u>STATEMENT OF FACTS</u>

¶{3} Mark and Marci have one minor child born on July 12, 2007. In a judgment entry dated January 14, 2008, the parties agreed to, among other things, Mark's child support obligation. Per agreement, Mark would pay $650 per month, plus a 2% processing fee for child support, which represented a $918.68 upward deviation per year. 01/14/08 J.E.

¶{4} After acquiring representation, Marci filed a Motion to Modify on April 10, 2008. That motion, in addition to asking for other modifications, asked the court to refer the issue of child support to "the appropriate agency for computation."

¶{5} The parties eventually agreed to have JCCSEA investigate the respective earnings of the parties so that the child support obligation could be properly determined. 10/09/08 J.E.

¶{6} On December 5, 2008, JCCSEA reported its findings to the juvenile court. It found that Mark was self-employed and that his gross income was $105,652.28. It then found that he should be paying $1,006.14 per month, plus a 2% processing charge for child support when health insurance is provided or $1,072.13 per month, plus a 2% processing charge when health insurance is not provided.

¶{7} Mark filed objections to JCCSEA's findings. He explained that he owns three businesses. The first is Cafe Primo, which gets the majority of its income from gambling machines. The second business is rental properties in Weirton, West Virginia. The third business is rental properties at the County Club Villas in Steubenville, Ohio. He contended that in computing his gross income, JCCSEA deducted the interest on his mortgage payments for his rental properties, but did not deduct the principal. He argues that it was incorrect for JCCSEA to fail to deduct his entire mortgage payments for the rental properties because they are ordinary and necessary expenses. Mark explained that by deducting the entire mortgage payments for the rental properties his gross income is $18,451.60, not $105,652.28. Marci responded to the objections and argued that JCCSEA's computation was correct.

¶{8} On May 22, 2009, the Magistrate for the Juvenile Court issued its decision on child support. It disagreed with Mark's arguments and concluded that JCCSEA's computation of child support was correct.

¶{9} Both Marci and Mark filed objections to the Magistrate's Order. In Marci's objections, among other points, she argued that the order did not contain the appropriate date of April 10, 2008 for the commencement of the modified child support order. 06/03/09 Objections. In his objections, Mark once again argued that the entire mortgage payment is an ordinary and necessary expense for his rental business and should have been deducted from his gross income. 06/12/09 Objections. Later, Mark filed a supplemental memorandum in support of his position. 07/24/09 Motion.

¶{10} On October 29, 2009, the Juvenile Court issued an order overruling both parties' objections and setting the child support obligation in conformity with the magistrate's order:

¶{11} "The Court * * * sets the father's child support at $1,006.14 per month, plus 2% processing charge, for current child support when private health insurance **is** being provided in accordance with the support order.

¶{12} "When private health insurance **is not** being provided in accordance with the support order, the father's child support shall be set at $978.46 per month, plus 2% processing charge and $93.67 per month, plus 2% processing charge for cash medical support, for a total monthly obligation of $1,072.13, plus 2% processing." 10/29/09 J.E.

¶{13} On November 5, 2009, the court issued an order that the support obligation is retroactively effective July 16, 2009. Mark filed a timely appeal from the October 29, 2009 decision. Marci did not appeal the trial court's order.

ASSIGNMENT OF ERROR

¶{14} "IT WAS ERROR FOR THE COURT TO ACCEPT THE COMPUTATIONS OF THE JEFFERSON COUNTY CHILD SUPPORT ENFORCEMENT AGENCY SINCE THE CHILD SUPPORT ENFORCEMENT AGENCY DID NOT ALLOW THE APPELLANT TO DEDUCT THE PORTION OF HIS MONTHLY MORTGAGE PAYMENTS FOR HIS RENTAL PROPERTIES WHICH WAS APPLIED TOWARDS PRINCIPLE *[SIC]* AND ONLY PERMITTED THE APPELLANT TO DEDUCT THE AMOUNT OF THE PAYMENT THAT REPRESENTED INTEREST."

¶{15} As aforementioned, the trial court found that only the interest portion of Mark's mortgage payments for his rental property was an ordinary and necessary expense that should be deducted from his gross income. Mark finds fault with that determination arguing that the entire mortgage payment, principal and interest, for the rental properties constitute an ordinary and necessary expense.

¶{16} The determination as to whether a child support obligor's expenditures fall within the definition of "ordinary and necessary" is within the sound discretion of the trier of fact. *Tonti v. Tonti*, 10th Dist. Nos. 03AP-494, 03AP-728, 2004-Ohio-2529, ¶53. Consequently, we will not reverse the trial court's decision unless it is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

¶{17} In determining the child support obligation, courts use the appropriate statutory worksheet which includes the parties' gross incomes.

¶{18} "Gross income" means, except as excluded in division (C)(7) of this section, the total of all earned and unearned income from all sources during a calendar year * * *. R.C. 3119.01(C)(7).

¶{19} It is undisputed that Mark owns his own business and thus, his gross income is derived from "self-generated income." The child support statute specifically defines what is "self-generated income:

¶{20} "'Self-generated income' means gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts. 'Self-generated income' includes expense reimbursements or in-kind payments received by a parent from self-employment, the operation of a business, or rents, including company cars, free housing, reimbursed meals, and other benefits, if the reimbursements are significant and reduce personal living expenses." R.C. 3119.01(C)(13).

¶{21} The term "ordinary and necessary expenses incurred in generating gross receipts" as used in the above definition also has it own definition:

¶{22} "'Ordinary and necessary expenses incurred in generating gross receipts' means actual cash items expended by the parent or the parent's business and includes depreciation expenses of business equipment as shown on the books of a business entity.

¶{23} "(b) Except as specifically included in 'ordinary and necessary expenses incurred in generating gross receipts' by division (C)(9)(a) of this section, 'ordinary and necessary expenses incurred in generating gross receipts' does not include depreciation expenses and other noncash items that are allowed as deductions on any federal tax return of the parent or the parent's business." R.C. 3119.01(C)(9).

¶{24} It is Mark's contention that the mortgage payments, both principal and interest, for his rental properties constitutes ordinary and necessary expenses as is defined above.

¶{25} In determining whether the trial court abused its discretion, the analysis will begin with the seminal case from the Ohio Supreme Court on whether a self-employed parent's purchase of a capital asset constitutes an ordinary and necessary expense - *Kamm v. Kamm* (1993), 67 Ohio St.3d 174.[1] In *Kamm*, the specific question

---

[1] It is noted that the statute defining "gross income," "self-generated income," and "ordinary and necessary expenses" has been repealed. However, very similar definitions were enacted in R.C. 3119.01. Thus, for our purposes, the analysis is still applicable since the definitions in all respects are the same.

was whether a self-employed farmer's acquisition of a new tractor was an ordinary and necessary expense that should be deducted from the parent's gross income for purposes of child support. Id. The Court concluded that it should be deducted. Id. at 176. It then qualified that holding by explaining that while the purchase of a new tractor by a farmer out of actual cash flow would be an ordinary and necessary expense, the purchase of a new computer system by the farmer, while arguably helpful in the management of the farm, would probably not be an ordinary and necessary expense. Id. at 177.

¶{26} Following that decision, the Third Appellate District was asked to determine whether a truck driver's purchase of a new truck by a loan was an ordinary and necessary expense and was it acquired by an actual cash expenditure. *Woods v. Woods* (1994), 95 Ohio App.3d 222. The court found that the purchase of a truck by a self-employed truck driver was unquestionably an ordinary and necessary expense. Id. at 225. On the issue of whether it was acquired by an actual cash expenditure, the court noted that cash is not defined in the statute. Id. However, it noted that Black's Law Dictionary defines cash as money or the equivalent, which included negotiable checks. Id. Thus, considering that definition, the court concluded that "monthly loan payments would be considered 'actual cash expenditures' towards the purchase of the rig." Id.[2]

¶{27} Following that decision the Tenth Appellate District decided a case remarkably similar to the one currently before this court. *Helfrich v. Helfrich* (Sept. 17, 1996), 10th Dist. No. 95APF12-1599. In *Helfrich*, the appellate court was reviewing the trial court's decision to deduct only the interest portion of the mortgage payments for a rental property from the parent's gross income as an ordinary and necessary expense. In reversing the trial court's decision, the appellate court explained that the entire mortgage payment should be deducted:

¶{28} "To the extent that the mortgages on appellant's rental properties were incurred in acquiring the rental properties, both the principal and the interest portions of the payments on the mortgages are ordinary and necessary expenses incurred in generating gross rental receipts for appellant. See *Woods, supra.* (Self-employed

---

[2]As with *Kamm*, the statutes used to determine *Woods* have been repealed, but those definitions have been enacted in the current version of R.C. 3119.01. Just as the statute in *Woods* did not define cash, the current version of R.C. 3119.01 also does not define cash. Thus, the *Woods* holding is still applicable.

truck driver's total monthly loan payments on truck held to be ordinary and necessary expenses incurred in generating gross income.) Further, both the principal and interest portion of appellant's mortgage payments are 'actual cash' expenditures. *Id.* at 225. Thus, appellant's acquisition mortgage payments constitute 'ordinary and necessary expenses incurred by the parent in generating the gross receipts' in their entirety, and the trial court erred in refusing to deduct the principal portion of such payments from appellant's 'gross income.'" Id.

¶{29} However, because there was an issue as to whether some of the mortgages were equity or acquisition mortgages, the court remanded the matter for the trial court to determine the purpose of the equity mortgages and to determine whether those mortgages were ordinary and necessary expenses.

¶{30} Thus, on the basis of the above cases, especially *Helfrich*, there is support for the conclusion that the trial court abused its discretion. The entire mortgage payment for rental property is an ordinary and necessary expense and it is a cash expenditure.

¶{31} That said, Marci makes a potentially viable argument that the trial court did not abuse its discretion because Mark was merely acquiring additional properties to lower his income; he did not need them to produce income. As the Supreme Court noted in *Kamm*, there is a concern that the obligor will accumulate assets for the sole purpose of lowering his gross income to the point that he/she has no income so that there is no or a lower child support obligation. However, the Court noted that if that is the case, it would support grounds for deviation under the child support guidelines:

¶{32} "As pointed out during oral argument, a parent could theoretically show no income for child-support calculations for the entire number of years such parent might be liable for the same. Recognizing this potential for inequitable results, we hold that allowance of a deduction for acquisition of a capital asset by a self-employed, child-support obligor against such obligor's gross receipts may be grounds for deviation from the child-support guidelines pursuant to R.C. 3113.215, providing the 'best interest of the child' is considered. *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 601 N.E.2d 496, approved and followed." *Kamm*, 67 Ohio St.3d at 177.

¶{33} The problem with Marci's argument is that there is nothing in the record that clearly supports her contention that Mark has acquired more rental properties for the purpose of lowering his income so that he has a lower child support obligation.

Likewise, there is nothing in the record that shows what he previously owned and what he has recently acquired. Furthermore, *Kamm* and *Helfrich* are clear that the starting point is that acquisition mortgage payments are deducted from the gross income. It was Marci's obligation, not Mark's, to request a deviation based on the allegation that Mark purchased the new rental property to deplete his income so that his child support obligation is lower. Marci did not request a deviation from the self-generated income amount and, as such, we cannot conclude that the trial court's ruling was based upon such a request. Hence, her argument does not provide a basis for affirming the trial court's decision.

**¶{34}** Consequently, considering all the above, the child support obligation is reversed and the cause is remanded to the trial court for recomputation of Mark's self-generated income, which is his gross receipts minus ordinary and necessary expenses. At that point, Marci may request a deviation based on her allegation that Mark purchased new rental property for the purpose of depleting his income.

**¶{35}** Prior to concluding, it is noted that at the end of Marci's brief she argues that the trial court abused its discretion by arbitrarily ruling that the commencement date for the payment of the modified child support obligation was to be July 16, 2009. She contends that the modification should be retroactively effective from April 10, 2008, the date she filed the motion to modify.

**¶{36}** We decline to address this argument because Marci did not file a cross-appeal as is required by App.R. 3(C). This appellate rule requires a cross-appeal when "a person who intends to defend a judgment or order against an appeal taken by an appellant and **who also seeks to change the judgment or order**." App.R. 3(C)(1) (Emphasis added). However, a cross-appeal is not required when an appellee intends to defend the judgment on grounds other than those relied on by the trial court but does not seek to change the judgment. App.R. 3(C)(2). If a cross-appeal is required, a notice of cross-appeal must be filed within the time allowed by App.R. 4. App.R. 3(C)(1).

**¶{37}** Marci is clearly seeking to change the court's order; she is seeking to change the date the modification of child support became effective. Thus, she was required to file a cross-appeal, which she did not. The Fourth Appellate District, when dealing with an appellee's request to modify the date the child support modification became effective, found that the issue was waived because appellee did not file a

cross-appeal as is required by App.R. 3(C). *Jones v. Brister*, 4th Dist. No. 00CA44, 2001-Ohio-2540.

¶{38} Consequently, on the basis of that decision and the clear language of App.R. 3(C), Marci has waived her argument and we will not entertain it.

<u>CONCLUSION</u>

¶{39} For the reasons expressed above, we find merit with Mark's assignment of error. The child support obligation is reversed and the cause is remanded to the trial court for further proceedings. On remand, the trial court is instructed to recompute Mark's self-generated income. Marci's argument regarding the retroactive starting date of the child support obligation is waived for failing to comply with App.R. 3(C).

Donofrio, J., concurs.
DeGenaro, J., concurs.