[Cite as *Suppan v. Suppan*, 2023-Ohio-249.]

STATE OF OHIO      )                IN THE COURT OF APPEALS
                         )ss:          NINTH JUDICIAL DISTRICT
COUNTY OF WAYNE    )

SARAH SUPPAN                    C.A. No.      21AP0040

     Appellant

     v.                          APPEAL FROM JUDGMENT
                               ENTERED IN THE
JASON SUPPAN                   COURT OF COMMON PLEAS
                               COUNTY OF WAYNE, OHIO
     Appellee                CASE No.     2014 DR 0382

DECISION AND JOURNAL ENTRY

Dated: January 30, 2023

---

TEODOSIO, Presiding Judge.

{¶1} Plaintiff-Appellant, Sarah Suppan ("Wife"), appeals from the judgment of the Wayne County Court of Common Pleas, Domestic Relations Division. This Court affirms.

I.

{¶2} This is the third time this matter has come before the Court. In *Suppan v. Suppan*, 9th Dist. Wayne No. 17AP0015, 2018-Ohio-2569 ("*Suppan I*"), and *Suppan v. Suppan*, 9th Dist. Wayne No. 20AP0005, 2020-Ohio-6883 ("*Suppan II*"), this Court reversed certain aspects of the lower court's judgment and remanded the matter for further proceedings. This appeal stems from the judgment the trial court issued following this Court's most recent remand.

{¶3} Wife and Dr. Jason Suppan ("Husband") married in July 1997 and had two children during their marriage. Their daughter was born in October 1998 and emancipated in May 2017. Their son was born in July 2000 and emancipated in July 2018. Husband was starting his residency when he and Wife met, and he eventually became the sole practitioner at his family's podiatry

practice, the Suppan Foot & Ankle Clinic ("the Clinic"). During the marriage, Husband purchased stock in two physician groups, Commerce Parkway LLC ("Commerce Parkway") and Wooster Ambulatory Surgical Center ("Wooster Ambulatory"). Additionally, he and Wife purchased a commercial building adjacent to the Clinic. Although Wife was employed at the outset of the marriage, she stopped working when the children were born. Thereafter, she primarily contributed to the marriage by raising the children and maintaining the household.

{¶4} Wife filed for divorce in October 2014. She agreed to vacate the marital residence by January 1, 2015, and the parties executed an agreement regarding temporary orders. They also later reached several stipulations as to the valuation of various assets, the division of certain assets and debts, and parenting time. A final hearing was held to address matters upon which the parties could not agree, including the valuation of the Clinic, the length of the marriage, the calculation of child and spousal support, the classification of certain property as marital or separate, various contempt issues, and each party's request for attorney fees. A magistrate heard evidence over the course of three days in February 2016.

{¶5} After the magistrate issued a decision, Wife and Husband filed objections. The trial court sustained one objection related to the valuation of Wife's horse but otherwise overruled the objections. Wife appealed, and this Court issued *Suppan I*. In that decision, we determined the trial court acted within its discretion when it (1) found the de facto termination date of the marriage was December 31, 2014; (2) classified 6.61 acres of land as Husband's separate property; (3) valued the Clinic; (4) divided the parties' interests in their respective vehicles and associated debts; and (5) issued orders related to the sale of their commercial building. *Suppan I*, 2018-Ohio-2569, at ¶ 18, ¶ 20-29, ¶ 32; ¶ 38; ¶ 40-45. We were unable to determine, however, "what consideration, if any, the trial court gave to the distributions [Husband] received from [the Clinic] when it

determined his gross income * * *." *Id.* at ¶ 9. Accordingly, we reversed and remanded the matter for the trial court to provide further analysis as to its income calculations. *Id.* Based on that resolution, we declined to address Wife's remaining arguments about child support, spousal support, and her request for attorney fees. *Id.* at ¶ 11, ¶ 12, ¶ 47.

{¶6}   While Wife's first appeal was pending, the parties' eldest child emancipated, and the Child Support Enforcement Agency ("CSEA") initiated administrative proceedings to terminate Husband's current child support obligation. Wife challenged the CSEA's findings and recommendations at the administrative level and, thereafter, requested a judicial hearing to challenge those findings and recommendations. Because Wife's appeal was pending in this Court when she requested judicial review of the CSEA's order, the lower court ordered her request stayed pending the resolution of her appeal.

{¶7}   Following this Court's decision and remand in *Suppan I*, the trial court permitted further discovery to address the issues identified in that decision. A hearing before a magistrate took place in December 2018. Although the hearing encompassed the issues identified in *Suppan I*, the magistrate also heard testimony and arguments on other issues pending with the trial court. Those issues included Wife's challenge to the CSEA's order and several motions for contempt filed by each party regarding the other's alleged failure to comply with various orders of the court. Following the hearing, the magistrate issued a decision, and each party filed objections to that decision. The trial court overruled those objections and entered judgment on the magistrate's decision.

{¶8}   Wife appealed the trial court's judgment on the magistrate's decision, and this Court issued *Suppan II*. Relevant to this appeal, we determined the trial court erred when it calculated Husband's gross income. *Suppan II*, 2020-Ohio-6883, at ¶ 16-23. Specifically, we

concluded the trial court mistakenly treated distributions Husband received from the Clinic as "bonuses" under R.C. 3119.05(D). *Id.* at ¶ 20. Because that statute was inapplicable, we remanded the matter for the trial court to "evaluate the distributions without being limited by the constraints of R.C. 3119.05(D)." *Id.* at ¶ 22. Based on that resolution, we declined to address Wife's remaining arguments about child support, spousal support, and her request for attorney fees. *Id.* at ¶ 24.

{¶9} Following this Court's remand in *Suppan II*, the lower court ordered the parties to file briefs addressing the proper calculation of Husband's gross income and the issues related to that income calculation. Wife and Husband each filed a brief in response to the court's order, and each also filed a brief in opposition to the other's filing. Upon review of the record and written filings, a magistrate issued a decision. Wife objected to the magistrate's decision, and Husband filed a brief in opposition. The trial court overruled Wife's objections and entered judgment on the magistrate's decision.

{¶10} Wife now appeals from the trial court's judgment and raises five assignments of error for this Court's review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN CALCULATING [HUSBAND'S] INCOME FOR PURPOSES OF CHILD AND SPOUSAL SUPPORT.

{¶11} In her first assignment of error, Wife argues the trial court erred when it calculated Husband's gross income. Specifically, she argues the trial court should have averaged the distributions Husband received from the Clinic in 2012, 2013, and 2014. For the following reasons, this Court rejects her argument.

**{¶12}** This Court generally reviews a trial court's decision to adopt a magistrate's decision for an abuse of discretion. *Barlow v. Barlow*, 9th Dist. Wayne No. 08CA0055, 2009-Ohio-3788, ¶ 5. "In so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, ¶ 18. Decisions regarding child support, including the decision whether to employ averaging in calculating a parent's gross income, "lie[] in the sound discretion of the trial court * * *." *Morrow v. Becker*, 9th Dist. Medina No. 11CA0066-M, 2012-Ohio-3875, ¶ 37. Accordingly, this Court reviews those decisions for an abuse of discretion. *Seegert v. Seegert*, 9th Dist. Summit No. 28932, 2018-Ohio-5119, ¶ 8. An abuse of discretion means the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

**{¶13}** Evidence presented at the final hearing showed Husband had three sources of income: his W-2 wages, distributions he received from Commerce Parkway and Wooster Ambulatory, and distributions he received from the Clinic. The trial court used a three-year average to calculate Husband's W-2 wages. The trial court took the average of those wages from 2012, 2013, and 2014 to arrive at an average W-2 income of $106,957. Regarding the distributions, the trial court only considered the ones Husband received in 2014. Wife argues the trial court erred by not averaging the distributions Husband received from the Clinic in 2012, 2013, and 2014.[1]

---

[1] Wife has not challenged the trial court's decision not to average the distributions Husband received from Commerce Parkway and Wooster Ambulatory. Accordingly, we only consider the trial court's decision not to average the distributions from the Clinic. *See* App.R. 16(A)(7).

{¶14} The evidence showed Husband received the following distributions from the Clinic: (1) $42,578 in 2012; (2) $55,566 in 2013; and (3) $28,601 in 2014. Both parties hired valuation experts, and, at the final hearing, the experts offered their opinions about the Clinic, its revenue trends, and its continued viability. Wife's expert determined the Clinic was financially sound and believed any decreases it had experienced in revenue could be offset by adjustments to expenses. It was his opinion the Clinic was overstaffed, so a staffing reduction could be used to offset the revenue losses. He admitted, however, that the Clinic had experienced a downward trend in revenue over the last five years. He also projected zero growth for the Clinic. Wife's expert acknowledged Husband had accrued over $60,000 in debt on a line of credit through the Clinic and was taking distributions in excess of its income to pay taxes and fund the parties' lifestyle.

{¶15} Husband's expert cited the foregoing problems as evidence supporting his much lower valuation determination. He noted the Clinic had experienced declining revenues and increased competition in the area and practice field. Further, he noted the Clinic had seen a decrease in revenue and caseload volume which he attributed to other factors such as the passage of the Affordable Care Act and the Electronic Medical Records Mandate. He ultimately valued the Clinic at an amount that was less than half the amount cited by Wife's expert and rejected the notion that the Clinic would rebound to pre-2012 revenue levels.

{¶16} In choosing not to average Husband's distribution income from the Clinic, the trial court specifically noted that it found the report of Husband's valuation expert more credible than the report of Wife's valuation expert. The court cited evidence that the Clinic's revenue had continued to decline and that it was operating in a "tougher competitive environment[.]" The court refused to exclude the Clinic distributions entirely as nonrecurring or unsustainable income, *see* R.C. 3119.05(B)(12)(e), because the evidence showed Husband continued to take distributions

from the Clinic despite its losing money. Nevertheless, the trial court found averaging the distribution income from the Clinic would be inappropriate under the circumstances. In calculating Husband's gross income, the trial court decided to only consider the most recent distribution income from 2014, which was also the Clinic's worst year for revenue up to that date.[2]

{¶17} Wife argues the trial court erred when it refused to average Husband's distribution income from the Clinic because the evidence did not support his claim the Clinic was failing. She notes Husband still had more than $170,000 in retained earnings at the end of 2014. Further, she notes Husband took multiple vacations a year and used funds from the Clinic to pay other debts such as expenses due on the parties' commercial building and personal cell phone bills. Wife also points to a personal financial statement Husband submitted to a lender in 2018, wherein he listed assets in excess of $1 million. According to Wife, the trial court should have averaged Husband's distribution income from the Clinic in 2012, 2013, and 2014 to arrive at a figure of $42,248.22 rather than a figure of $28,601.

{¶18} Having reviewed the record, we cannot conclude the trial court abused its discretion when it chose not to average Husband's distribution income from the Clinic. *See Morrow*, 2012-Ohio-3875, at ¶ 37. The child support statute permits a trial court to average income over a reasonable period of years "when appropriate[.]" R.C. 3119.05(H). The trial court specifically

---

[2] Notably, the hearing on remand took place in 2018, so the parties also presented financial information that post-dated 2014. The magistrate nevertheless chose to rely on Husband's 2014 gross income figures. She did so because the evidence showed his wages had remained the same, and she questioned the impact the divorce proceedings had had on his distributions. Although Husband only took $6,866 in distributions from the Clinic in 2016, the magistrate noted Husband had taken that distribution while this matter was pending. The magistrate considered the 2014 figure to be a more accurate reflection of Husband's distribution income under the circumstances, and the trial court entered judgment on the magistrate's decision and income determinations. Neither party has challenged the lower court's decision to rely on the older income distribution figures. Accordingly, this Court also relies on those figures in analyzing Wife's argument.

explained why it felt it would not be appropriate to average Husband's distribution income from the Clinic. There was evidence the Clinic's revenues had continued to decline, zero growth was projected, and competition in the field and area had increased. While Wife offered competing valuation testimony, her own expert agreed the Clinic's revenue trends had declined and zero growth was projected. Her expert also acknowledged Husband was incurring debt and taking distributions that exceeded the Clinic's income. The trial court specifically found Husband's expert more credible than Wife's, and the record does not reflect that decision was unreasonable, arbitrary, or unconscionable. *See Blakemore*, 5 Ohio St.3d 217, 219.

{¶19} To the extent Wife cites an asset statement Husband completed in 2018 in support of her argument, that evidence falls well outside the date range the trial court used to calculate Husband's gross income (i.e., 2012 through 2014). Moreover, Wife never suggested Husband was purposely acquiring assets to lower his income, *see In re Orecchio*, 7th Dist. Jefferson No. 09 JE 37, 2010-Ohio-2849, ¶ 31-32, or was voluntarily underemployed such that his assets might be considered potential income, *see Musci v. Musci*, 9th Dist. Summit No. 23088, 2008-Ohio-5882, ¶ 12. The decision whether to average Husband's distribution income from the Clinic was a matter left to the sound discretion of the trial court. *Morrow*, 2012-Ohio-3875, at ¶ 37. This Court will not second-guess the trial court's determination that it would be inappropriate to average Husband's distribution income based on the evidence presented herein. *See Pons*, 66 Ohio St.3d at 621. Upon review, Wife has not shown the trial court abused its discretion by refusing to average Husband's distribution income from the Clinic. Thus, her first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED BY AWARDING A 70% DOWNWARD DEVIATION ON CHILD SUPPORT TO [HUSBAND].

**{¶20}** In her second assignment of error, Wife argues the trial court erred when it awarded Husband a downward deviation in child support. We disagree.

**{¶21}** As previously noted, this Court applies the abuse of discretion standard when reviewing a trial court's judgment on a magistrate's decision and issues of child support. *See Barlow*, 2009-Ohio-3788, at ¶ 5; *Morrow*, 2012-Ohio-3875, at ¶ 37. For parents with a combined income exceeding $150,000 per year, former R.C. 3119.04(B)[3] instructed trial courts to determine child support obligations on a "case-by-case basis" with consideration of the "needs and the standard of living of the children * * *." The statute required trial courts to calculate support according to the basic child support schedule and worksheet and use that figure as "the starting point" in its analysis. *Bajzer v. Bajzer*, 9th Dist. Summit No. 25635, 2012-Ohio-252, ¶ 5. Any downward deviation from that figure required a determination on the part of the trial

---

[3] R.C. 3119.04 was amended on March 28, 2019, during the pendency of this litigation. Because the trial court applied former R.C. 3119.04 and neither party has challenged its reliance on that statute, this Court likewise applies former R.C. 3119.04 in reviewing Wife's argument on appeal.

court that the minimum figure "'would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount.'" *Id.*, quoting R.C. 3119.04(B).

{¶22} We begin by outlining the various child support orders the trial court entered in this case. The parties reached an agreement regarding temporary orders in January 2015. Pursuant to that agreement, Husband was ordered to pay Wife $2,200 per month with that entire sum being treated as alimony for tax purposes. Husband agreed to be temporarily responsible for a significant amount of the parties' debts, including any debts associated with the marital residence. The parties further agreed to shared parenting and to divide all ordinary day-to-day expenses associated with the children "as agreed upon[.]" Although they prepared a child support guideline worksheet, the parties agreed it would be unjust, inappropriate, and not in the best interest of the children to have Husband pay any child support given their shared parenting arrangement, their agreement to share the children's expenses, and their current distribution of income and debt. The parties expressly agreed "to a deviation of $0 per month in child support * * *."

{¶23} When the trial court issued its first judgment entry of divorce in October 2016, it ordered Husband to pay Wife $400 per month in child support, plus an additional $201.92 in cash medical support if health insurance was not provided. It further ordered the parties to divide expenses for the children based on their income percentages, which it had calculated according to the child support guideline worksheet. By virtue of that calculation, Husband would be responsible for 65% of the expenses and Wife would be responsible for 35% of the expenses. While Husband earned significantly more than Wife, the trial court found a 70% downward deviation from his calculated guideline support obligation was warranted. That downward deviation was based on multiple factors, all of which were outlined in the magistrate's decision upon which the court entered judgment. Those factors included the nearly equal division of parenting time the parties

enjoyed under their shared parenting agreement, the 65%/35% division of expenses related to the children, the fact that the court was ordering Husband to pay 100% of the children's out-of-pocket medical expenses, and the fact that Husband would be responsible for the payment of the marital debt on the parties' home and other items while Wife would "be leaving the marriage debt free."

{¶24} The trial court next entered a judgment on the issue of child support in May 2019, following this Court's remand in *Suppan I*. By that time, both the parties' children had emancipated, with the CSEA initiating administrative proceedings to terminate support as to their eldest child during the pendency of Wife's first appeal. The trial court determined each party's gross income, resulting in an increase from its prior income determination due to Wife earning slightly more wages per year and its inclusion of Husband's distribution income from the Clinic. Due to the emancipations that had occurred, the trial court issued its child support order based on two distinct periods. From the time the trial court first entered its judgment of divorce (i.e., October 15, 2016) through the date of the eldest child's emancipation, the trial court found Husband was obligated to pay $576.25 per month in child support or $347.85 in support plus $201.92 in cash medical support if private health insurance was not available. From the date of the eldest child's emancipation through the date of the youngest child's emancipation, the trial court found Husband was obligated to pay $420.67 per month in child support or $242.17 in support plus $126.25 in cash medical if private health insurance was not available. For both periods, the trial court found the continued downward deviation of 70% was appropriate. Again, that deviation was based on multiple factors, including the shared parenting arrangement, the 65%/35% division of expenses related to the children, and the fact that the court was ordering Husband to pay 100% of the children's out-of-pocket medical expenses.

{¶25} The trial court issued the judgment entry currently before this Court following our remand in *Suppan II*. Because the trial court chose not to average Husband's distribution income from the Clinic, it found there was no change in his gross income. Thus, in issuing its judgment, the trial court adopted and incorporated its child support orders from its 2019 judgment.

{¶26} In her second assignment of error, Wife has not challenged any of the income figures the trial court used in arriving at Husband's child support obligation. Her only argument is that the trial court erred when it found a 70% downward deviation from Husband's calculated guideline support obligation was warranted. According to Wife, the record does not support the deviation the trial court ordered. First, she challenges the trial court's finding that the parties exercised equal parenting time. She cites her own testimony, during which she said the parties' son lived with her most of the time once their daughter emancipated. Second, she claims the trial court failed to fully consider her and her son's standard of living. She cites evidence she introduced, showing her monthly expenses exceeded the income she received from her job and temporary support payments. Finally, she argues the trial court placed undue weight on the fact that Husband was responsible for 100% of the children's uninsured medical expenses, as those expenses were minimal. Because she earned significantly less than Husband, had fewer assets, cared for their son more often, and had difficulty covering her expenses, Wife argues, the record does not support the trial court's decision to award a downward deviation.

{¶27} Having reviewed the record, we cannot conclude the trial court went so far as to abuse its discretion when it found a 70% downward deviation from guideline child support was warranted under these particular facts and circumstances. *See Bajzer*, 2012-Ohio-252, at ¶ 5. Notably, the trial court's judgment on child support was relatively short-lived, as the parties' eldest child emancipated less than eight months after the court's 2016 judgment and their youngest child

emancipated about 21 months after that same judgment. The parties also originally agreed to an even larger deviation when stipulating to the temporary orders that remained in effect throughout the proceedings. That agreed-upon deviation resulted in a child support award of $0 per month. In stipulating to that deviation, the parties specifically agreed it would be unjust, inappropriate, and not in the children's best interest to order Husband to pay *any* child support given the distribution of their income and debt and their agreement to share the children and the children's expenses. The 70% downward deviation the trial court ordered represented a significant increase in Husband's child support obligation when compared with his $0 obligation under the temporary orders.

{¶28} Although Wife testified the parties' teenage son spent more time at her household after their daughter's emancipation, she does not dispute that there was a shared parenting agreement in place calling for equal parenting time. Wife never pursued any modification to that agreement. In fact, after their daughter emancipated, she sought to hold Husband in contempt for not abiding by the terms of that agreement regarding her right of first refusal. Because the shared parenting plan called for equal parenting time, it was not unreasonable for the trial court to consider the plan in crafting its child support orders. Nor was it unreasonable for the court to consider Husband's responsibility for 100% of the children's uninsured medical expenses. Wife insists the trial court should not have given any weight to the uninsured medical expenses because the actual cost of those expenses was known at the time of the remand hearing and was not significant. She essentially argues for a retroactive recalculation of child support in her favor based on information neither the parties, nor the trial court would have known during the period Husband's child support obligation was in effect. Yet, Wife has not set forth any authority authorizing that type of hindsight

approach. *See* App.R. 16(A)(7). This Court will not create an argument on her behalf. *See Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934, * 8 (May 6, 1998).

{¶29} The record reflects that, in ordering a downward deviation, the trial court considered all the evidence, including the distribution of income and debt, the division of the expenses, and the terms of the shared parenting plan. To the extent Wife set forth evidence she was living beyond her means, there also was evidence Husband was incurring significant debt and borrowing against the Clinic to cover taxes, payments on the commercial building the parties owned, and expenses. The trial court specifically found that, under the circumstances, a deviation was reasonable, appropriate, and in the best interests of the children. Because Wife has not shown the court's decision was unreasonable, arbitrary, or unconscionable, we reject her argument that the court abused its discretion by ordering a 70% downward deviation. *See Bajzer* at ¶ 5. Wife's second assignment of error is overruled.

**ASSIGNMENT OF ERROR III**

THE TRIAL COURT ERRED BY NOT MAKING CHILD SUPPORT RETROACTIVE TO DECEMBER 31, 2014.

{¶30} In her third assignment of error, Wife argues the trial court erred when it failed make its child support award retroactive to the de facto termination date of the parties' marriage. We disagree.

{¶31} "When * * * parties to a divorce operate under a temporary order of support during divorce proceedings without motions to modify being filed and ruled upon, a trial court cannot in effect retroactively modify that order via the final divorce decree." *Ostmann v. Ostmann*, 168 Ohio App.3d 59, 2006-Ohio-3617, ¶ 43-45 (9th Dist.). Doing so creates an immediate arrearage that offends the due process rights of the obligor. *Id.* at ¶ 42-45. Absent a prior request for modification, "any modification of the temporary support orders 'may equitably be applied only

prospectively from the date of the decree.'" *Morrison v. Morrison*, 9th Dist. Summit No. 27150, 2014-Ohio-2254, ¶ 23, quoting *Ostmann* at ¶ 45.

**{¶32}** When the trial court first entered its judgment entry of divorce in October 2016, it ordered Husband's child support obligation to take effect October 15, 2016. The trial court continued to rely on that date when it issued subsequent judgment entries in response to *Suppan I* and *Suppan II*. Wife argues the trial court erred by not ordering Husband's child support obligation to take effect December 31, 2014 (i.e., the de facto termination date of the marriage). Though Wife concedes temporary support orders were in effect during the pendency of the proceedings, she insists she "never waived her right to seek retroactive child support at the final hearing, and nothing in the temporary orders precluded her from doing so."

**{¶33}** As previously noted, the parties stipulated to temporary orders, and those orders took effect on January 15, 2015. The temporary orders required Husband to pay Wife $2,200 per month with that entire sum being treated as alimony. The parties agreed to a deviation of $0 per month in child support.

**{¶34}** The record reflects that Wife never moved to modify the temporary support orders before the final hearing. At the final hearing, she repeatedly testified that she only agreed to the temporary orders because she was desperate to leave the martial residence and needed funds to do so. Husband's counsel objected on the basis that the temporary orders were not subject to review. In response to that objection, Wife's attorney specifically indicated Wife was not seeking to rework the temporary orders. Rather, Wife was offering testimony to support her contention that Husband should not receive a downward deviation and should be ordered to pay at least guideline support in the trial court's final judgment of divorce. Wife's argument, therefore, was consistent with a request for a prospective change to Husband's child support obligation.

**{¶35}** Absent a prior request for modification, any change the trial court made to Husband's child support obligation under the temporary orders had to be prospective in nature. *Morrison*, 2014-Ohio-2254, at ¶ 23, quoting *Ostmann*, 2006-Ohio-3617, at ¶ 45. Wife was free to seek a modification of the temporary orders, but never did so. Because the trial court could not order Husband's child support obligation to apply retroactively in contravention of the temporary orders, we reject Wife's argument to the contrary. Wife's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED BY AWARDING [WIFE] ONLY $2,200 PER MONTH IN SPOUSAL SUPPORT.

**{¶36}** In her fourth assignment of error, Wife argues the trial court erred in its spousal support determination because its award was "unreasonably low." For the following reasons, we reject Wife's argument.

**{¶37}** As previously noted, a trial court's decision to adopt a magistrate's decision is generally reviewed for an abuse of discretion but that review must be undertaken "with reference to the nature of the underlying matter." *Tabatabai*, 2009-Ohio-3139, at ¶ 18. Because awards of spousal support generally fall within the sound discretion of the trial court, this Court likewise reviews those decisions for an abuse of discretion. *See Wells v. Wells*, 9th Dist. Summit No. 25557, 2012-Ohio-1392, ¶ 22. An abuse of discretion will be found only if a trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore*, 5 Ohio St.3d at 219. In applying that standard, a reviewing court may not substitute its own judgment for that of the trial court. *See Pons*, 66 Ohio St.3d at 621.

**{¶38}** "A trial court must consider the factors set forth in R.C. 3105.18(C)(1)(a)-(n) '[i]n determining whether spousal support is appropriate and reasonable,' and in determining the nature,

amount, terms, and duration of a spousal support payment." *Lee v. Lee*, 9th Dist. Lorain No. 17CA011235, 2019-Ohio-61, ¶ 9, quoting R.C. 3105.18(C)(1). Those factors include:

(a) The income of the parties, from all sources * * *;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

* * *

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

* * *

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.18(C)(1). "[T]he trial court need not comment on each factor, but the record must demonstrate that the court considered each factor in making its spousal support award." *Barlow v. Barlow*, 9th Dist. Wayne No. 08CA0055, 2009-Ohio-3788, ¶ 22.

{¶39} The trial court originally ordered Husband to pay Wife $1,600 per month in spousal support for 70 months effective October 15, 2016. Following this Court's remands in *Suppan I* and *Suppan II*, the trial court recalculated Husband's gross income based on its inclusion of his

distribution income from the Clinic. The trial court also recalculated Wife's gross income based on the passage of time. After considering those recalculations, the trial court ordered Husband to pay Wife $2,200 per month in spousal support for 70 months. The court credited Husband with 21 payments based on his temporary support payments.

{¶40} Wife argues the trial court abused its discretion in its spousal support determination because the amount of support it imposed was not reasonable or appropriate. Consistent with her first assignment of error, she argues that income averaging should have resulted in a higher gross income for Husband, and thus, a higher support obligation. She notes Husband's income and assets far exceeded her own while she struggled to meet her monthly expenses. She also notes Husband was a licensed podiatrist while she left the marriage with no marketable skills. Because she should have been awarded at least enough spousal support to meet her monthly expenses, Wife argues, the matter must be remanded for the trial court to award her a reasonable amount of spousal support.

{¶41} The trial court determined Husband had a gross income of $142,149 per year while Wife had a gross income of $52,798 of per year. At the time of the final hearing, Husband was 46 years old, Wife was 40 years old, and both parties were in good health. Although the parties had two children, both children emancipated by the time the trial court issued its 2019 judgment. Accordingly, child care was not a factor in the court's decision. The trial court recognized Husband had a higher earning ability than Wife, given his degree and the fact that she did not work outside the home for most of the marriage. The court also noted, however, that Wife had obtained steady employment after receiving her certificate for medical coding. The parties were married for 17.5 years and lived a very comfortable lifestyle. Substantial debts had accrued, however, owing to the divorce proceedings, payments owed on the commercial building the parties owned,

and other items such as medical bills. In dividing the assets and liabilities of the parties, the trial court assigned the vast majority of the debt to Husband, including the mortgage on the marital residence, an equity line of credit, hospital bills for Wife and the parties' son, and the balance on the marital credit card. Wife also received half the equity in the marital residence, half the marital equity in the Clinic, half the equity in the shares from Wooster Ambulatory and Commerce Parkway, and half of the equity in the commercial building the parties owned. Based on the evidence presented and its consideration of the factors set forth in R.C. 3105.18(C)(1), the trial court found a spousal support award of $2,200 per month to be reasonable and appropriate.

{¶42} Having reviewed the record, we cannot conclude the trial court abused its discretion when it ordered Husband to pay $2,200 per month in spousal support. *See Wells*, 2012-Ohio-1392, at ¶ 22. This Court previously rejected Wife's argument that the trial court should have averaged Husband's distribution income from the Clinic to arrive at a higher gross income figure. *See* Discussion of Assignment of Error One, *supra*. The record reflects the trial court considered the factors set forth in R.C. 3105.18(C)(1). Although Husband earned more than Wife and had a higher earning ability, other factors weighed in favor of a lower support award. Those factors included Husband's responsibility for a significant amount of the parties' debt and the division of the marital equity. *See* R.C. 3105.18(C)(1)(i), (n). Moreover, while Wife testified that she was struggling to meet her expenses, Husband set forth similar evidence. There was evidence he was borrowing against the Clinic and accruing credit card debt to satisfy the parties' taxes obligations, payments related to the commercial building, and his own expenses. Upon review, Wife has not shown the trial court abused its discretion when it determined a monthly award of $2,200 in spousal support was reasonable and appropriate under the circumstances. *See* R.C. 3105.18(C)(1). Accordingly, her fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED BY NOT AWARDING MS. SUPPAN
ATTORNEY'S FEES[.]

{¶43}  In her fifth assignment of error, Wife argues the trial court erred when it failed to

award her attorney fees.  We disagree.

{¶44}  R.C. 3105.73(A) allows a trial court in an action for divorce to

award all or part of reasonable attorney's fees and litigation expenses to either party
if the court finds the award equitable.  In determining whether an award is equitable,
the court may consider the parties' marital assets and income, any award of
temporary spousal support, the conduct of the parties, and any other relevant factors
the court deems appropriate.

"'Because a court addresses an award of attorney['s] fees through equitable considerations, a trial

court properly can consider the entire spectrum of a party's actions, so long as those actions

impinge upon the course of the litigation.'"  *Schoch v. Schoch*, 9th Dist. Lorain No. 18CA011382,

2019-Ohio-1394, ¶ 10, quoting *Padgett v. Padgett*, 10th Dist. Franklin No. 08AP-269, 2008-Ohio-

6815, ¶ 17.  "[A] trial court's decision concerning whether an award of attorney fees is equitable

is reviewed for an abuse of discretion."  *Weber v. Devanney*, 9th Dist. Summit No. 29374, 2020-

Ohio-4450, ¶ 42.

{¶45}  Wife argues the trial court erred by not awarding her attorney fees because

Husband had a much higher income and access to financial resources than were unavailable to her.

For example, Wife notes Husband charged debt to the Clinic to pay a portion of his own attorney

fees.  Wife also argues Husband repeatedly withheld information from her or was untruthful during

the course of the proceedings.  She points to evidence that he failed to tell her about prospective

tenants to lease their commercial building, failed to immediately disclose certain assets, and falsely

indicated he had erased text messages from his cell phone when, in fact, he had saved some.  Wife

argues the disparity in their income, combined with "[a]ll these falsehoods," warranted an award of attorney fees in her favor.

{¶46} Having reviewed the record, we cannot conclude the trial court abused its discretion when it found any award of attorney fees would be inequitable. *See Weber*, 2020-Ohio-4450, at ¶ 42. Husband's gross income was substantially higher than Wife's gross income. Yet, Husband also was responsible for his court-ordered payments (i.e., spousal support and child support) and a significant amount of debt the court assigned to him upon the parties' divorce. There was evidence the Clinic's revenues had continued to decline. Moreover, there was evidence Husband bore the brunt of the payments associated with the commercial building the parties owned. Issues surrounding the lease and sale of the building were heavily litigated in the court below. The parties eventually agreed Husband would undertake responsibility for all payments associated with the building until Wife received her property settlement, at which point she would use those funds to repay him for her court-ordered contribution. When Wife eventually received those funds, however, she used that money to purchase a home and pay her attorney. The trial court specifically found Wife in contempt for willfully and purposely failing to abide by its orders.

{¶47} The record supports the conclusion this was a highly contested divorce with the conduct of both parties contributing to the length and complexity of the proceedings. Upon review, Wife has not shown that it was unreasonable, arbitrary, or unconscionable for the trial court to refuse to award either party their attorney fees. Thus, her fifth assignment of error is overruled.

III.

{¶48} Wife's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CARR, J.
SUTTON, J.
CONCUR.

APPEARANCES:

PATRICK L. BROWN, Attorney at Law, for Appellant.

LON R. VINION, Attorney at Law, for Appellee.